**UNITED STATES of America, Appellee,**

v.

**John GRANDIA, Defendant–Appellant.**

**No. 840, Docket 93–1538.**

United States Court of Appeals,
Second Circuit.

Submitted Dec. 16, 1993.

Decided March 9, 1994.

Richard C. Bothfeld, Essex Junction, Vt., for Defendant–Appellant.

Gregory L. Waples, Assistant United States Attorney, Burlington, Vt. (Charles A. Caruso, United States Attorney for the District of Vermont, David V. Kirby, Chief, Criminal Division), for Appellee.

Before: MAHONEY, WALKER, Circuit Judges, and EGINTON, District Judge.*

WALKER, Circuit Judge:

Defendant John Grandia challenges the sufficiency of his guilty plea entered in the district court (Fred I. Parker, *Chief Judge* ). During the course of an extensive colloquy pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the trial court inadvertently failed to specifically ask how the defendant pleaded. Consequently, the defendant argues that he has never entered a voluntary guilty plea, and that his sentence must be vacated and he be allowed to plead anew. Because we find from the surrounding circumstances and events following the plea allocution that the defendant entered a voluntary guilty plea, we affirm defendant's conviction and sentence.

* The Honorable Warren W. Eginton, United States District Judge for the District of Connecticut, sitting by designation.

## BACKGROUND

On November 16, 1992, driving a rented van, defendant entered the United States from Canada via a back road in rural Vermont. Defendant ignored posted signs requiring all incoming traffic to report for inspection to the nearby Port–of–Entry station. Border Patrol agents observed defendant's clandestine entry by means of closed-circuit television and subsequently stopped defendant's vehicle several miles from the border. Immigration records revealed that defendant, a Canadian citizen, had been deported from the United States in 1991 following his arrest for attempting to smuggle untaxed cigarettes into Canada.

Agents recovered from defendant $260 in U.S. currency—including two consecutively-numbered new $100 bills—as well as $114 in Canadian currency. Unbeknownst to defendant at the time, agents also recovered 98 new $100 bills from a jacket found in the van. The bills were numbered consecutively to the two $100 bills found on defendant. Agents also found a currency exchange receipt which showed that defendant had converted $12,830 in Canadian currency into exactly $10,000 in U.S. currency.

Defendant was asked to fill out a Customs Declaration Form. This form advises individuals that it is not illegal to bring more than $10,000 or its foreign equivalent into the United States, but that such importation must be reported. The Customs Declaration Form which defendant filled out states:

FAILURE TO FILE THE REQUIRED REPORT OR FALSE STATEMENTS IN THE REPORT MAY LEAD TO SEIZURE OF THE CURRENCY OR INSTRUMENTS AND TO CIVIL PENALTIES AND/OR CRIMINAL PROSECUTION

In addition to the warning on the form, agents verbally told defendant of the reporting requirement. Nonetheless, when filling out the form, defendant checked the box that indicated that he was not carrying currency in excess of $10,000. In addition, he later confirmed to an agent that he was not over the limit.

Agents then confronted defendant with the additional currency found in the van. After *Miranda* warnings, defendant told the agents that the money on his person belonged to his girlfriend, a passenger in the van and also a Canadian citizen, and that the two of them intended to buy Christmas presents in the United States with the money. As for the $9,800 found in the van, defendant told the agents that he intended to purchase liquor from a distributor in Vermont.

The Government charged defendant with failing to file a monetary instrument report, in violation of 31 U.S.C. §§ 5316(a)(1)(B) and 5322(a), and with unlawful entry after deportation, in violation of 8 U.S.C. § 1326(a). On November 18, 1992, two days after his arrest, defendant agreed to waive indictment and entered into a plea agreement with the government. According to the agreement, the defendant "represent[ed] that he intends to plead guilty because he is, in fact, guilty of the crimes to which he will enter a plea."

On November 24, 1992, the defendant, accompanied by counsel, appeared in district court to plead guilty to the two-count information. At the plea proceeding, Chief Judge Parker conducted an extensive colloquy with the defendant. Chief Judge Parker first confirmed that the defendant was not under the care of a doctor or psychiatrist, had never been hospitalized or treated for narcotics addiction, and was not currently under the influence of any drug or alcohol. Next, he carefully explained to the defendant the nature of the charges and that he had the right to be indicted by a grand jury. The defendant executed a written waiver of indictment in open court.

The district court then thoroughly discussed the plea agreement with the defendant. Chief Judge Parker pointed out that under its terms, defendant was agreeing to plead guilty to the two counts in the information. The defendant stated that he understood. The judge informed the defendant of the maximum penalties for each count, and meticulously explained to the defendant the various procedures under the Sentencing Guidelines that would apply to his sentence. He informed the defendant that he would not be able to withdraw his plea later if he

happened not to like his sentence. The defendant replied that he understood.

Next, Chief Judge Parker explicitly told the defendant that he was "not required to plead guilty," to which the defendant again replied that he understood. The court explained to the defendant all of the rights available were he not to plead guilty, including the right to a speedy and public trial and assistance of counsel at trial, the presumption of innocence and the requirement that the government prove his guilt beyond a reasonable doubt before a jury of his peers, the right to confront witnesses, and the right against self-incrimination. Finally, the following colloquy transpired:

THE COURT: In entering your guilty plea, are you doing so voluntarily?

THE DEFENDANT: Yes.

After a detailed recounting of the facts of defendant's offense by the Government, the defendant admitted that this account was an accurate representation of the true facts. After this response, and without objection from counsel or the defendant, the district judge stated:

All right. In that case, I'm going to accept the guilty pleas to both counts, make a finding that the plea is knowledgeable, voluntary, and has a basis in fact containing all of the elements of the offenses with which you have been charged and to which you are pleading.

The hearing ended shortly thereafter. In the course of Chief Judge Parker's thorough colloquy, however, he inadvertently failed to ask the defendant the customary final question: "How do you plead?" This appeal stems from that omission.

After the plea allocution, the Probation Officer completed a preliminary version of the Pre–Sentence Report ("PSR"). The report was highly unfavorable to defendant. Finding that he had lied during his presentence interview about his intended use of the funds, it recommended against a reduction for acceptance of responsibility. Further, it recommended a departure from Criminal History Category I to Category VI because of defendant's extensive criminal record in Canada.

Shortly after receiving a copy of the preliminary report, defendant filed a *pro se* motion to withdraw his guilty plea. The thrust of defendant's motion was that he pleaded guilty not because he was in fact guilty, but only because he was informed that he would spend less time in jail than if he pleaded not guilty and remained incarcerated pending trial. In a supporting affidavit, he stated:

I, [sic] pleaded guilty on or about November 24, 1992 to Reentry After Deportation and Failure to File Currency and Monetary Instrument Report.

\* \* \* \* \* \*

I pleaded guilty to the aforementioned indictment in the belief that doing so I would be incarcerated for a lesser period of time then if I had pleaded not guilty

. . . .

Chief Judge Parker denied this *pro se* motion on March 2, 1993. Defendant submitted a second, substantially similar motion on March 16, 1993. In an attached affidavit, defendant stated:

I appeared before the court and as advised by my attorney pleaded guilty to all counts. . . .

Chief Judge Parker denied this second motion on April 27, 1993.

The sentencing hearing commenced on July 19, 1993. Chief Judge Parker agreed with the PSR that the defendant intended to purchase liquor and smuggle it back into Canada, and thus increased his Base Offense Level by four levels. Also, the court agreed with the PSR not to grant a reduction for acceptance of responsibility. Finally, Chief Judge Parker agreed to upwardly depart, but only to Criminal History Category IV, not Category VI as recommended.

Just as the court was about to impose sentence, the defendant interjected that he had never formally entered a plea in the case. After a brief perusal of the transcript of the plea proceeding, the court stated that the defendant appeared to be correct and temporarily adjourned the sentencing proceeding.

The sentencing proceeding resumed the following day. Chief Judge Parker indicated

that, after his review of the plea transcript, he was satisfied that the defendant had entered a valid guilty plea. He then sentenced the defendant to a term of imprisonment of 33 months on the currency reporting count, and a concurrent sentence of 24 months' imprisonment on the unlawful entry count. The defendant is currently incarcerated.

## DISCUSSION

Rule 11 of the Federal Rules of Criminal Procedure dictates the procedures to be followed concerning guilty pleas and plea agreements. "The Second Circuit has adopted a standard of strict adherence to Rule 11." *See United States v. Lora*, 895 F.2d 878, 880 (2d Cir.1990). However, the defendant does not, nor could he, assail the Rule 11 colloquy in this case. The able district judge fully informed the defendant of the consequences of a guilty plea, and the defendant indicated his willingness to proceed.

The defendant claims that the guilty plea violated Rule 11 because the court never formally asked the defendant, "How do you plead?" We are mindful that the strongly preferred practice is to specifically inquire of the defendant whether he or she in fact pleads guilty. Indeed, as the Supreme Court stated in *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), a valid guilty plea cannot be "presume[d] ... from a silent record." However, the district court's failure to specifically ask the defendant "How do you plead?" is not necessarily fatal if, as here, it is clear from the facts and circumstances that the defendant intended to plead guilty, affirmatively admitted his guilt, stated that he was entering his plea voluntarily, and fully believed he was pleading guilty.

In short, while it is far preferable to establish the fact of the guilty plea by expressly eliciting from the defendant a response of "Guilty" to the question "How do you plead?", that fact may be inferred from all of the surrounding facts and circumstances provided that such facts and circumstances admit of no other conclusion.

In this case, the conclusion that the defendant entered a guilty plea is inescapable.

The defendant plainly indicated his intent to plead guilty to the two-count information. He voluntarily and in open court signed a waiver of indictment, a necessary prerequisite in these circumstances for entering a guilty plea. The defendant stated to the court that under the plea agreement he intended to plead guilty. He stated that he understood the possible ramifications of his guilty plea and that he understood that by pleading guilty he was waiving valuable constitutional rights. He expressly affirmed that he was entering his guilty plea voluntarily. The defendant then admitted without reservation to the incriminating facts of the crime he had committed, and neither he nor his counsel raised the slightest question or concern when Chief Judge Parker declared that he would accept and enter the guilty plea. Finally, any doubt that the defendant himself believed he had pleaded guilty was removed when, in support of motions to withdraw his guilty plea, the defendant submitted affidavits admitting that he had in fact "pleaded guilty" but was misled as to the sentence he would receive. In light of the foregoing facts, we conclude that defendant entered a voluntary guilty plea at the plea allocution in accordance with Rule 11 of the Federal Rules of Criminal Procedure.

## CONCLUSION

While district court judges must be vigilant to ensure that a defendant affirmatively states his plea for the record, in this case we easily conclude that the district court's oversight in not formally asking the defendant "How do you plead?" made no difference. It is plain to us that at the time of the plea all involved, and particularly the defendant, believed that a guilty plea had been taken and that in fact the defendant voluntarily entered a valid guilty plea before the district court. Consequently, the judgment of the district court is affirmed.