**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James A. MASON, Defendant–**
**Appellant.**

No. 99–50389.
**D.C. No. CR–96–01140–ER–8.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 2001.

Decided Aug. 23, 2001.

Before HALL, MICHEL,* and TROTT, Circuit Judges.

### MEMORANDUM **

#### OVERVIEW

A jury convicted James Mason of conspiring to possess cocaine with the intent to distribute in violation of 21 U.S.C. §§ 846 and 841, and District Judge Edward Rafeedie sentenced him to 240 months in prison. Mason appeals his conviction and sentence. We have jurisdiction over Mason's timely appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and for the reasons expressed below, we AFFIRM.

Because the parties are familiar with the facts of this case, we recount them here only where necessary to explain our decision.

#### DISCUSSION

**1. Ineffective Assistance of Counsel in the Current Proceedings**

█ Mason claims that his attorney failed to pursue favorable plea options that his co-defendants' lawyers were able to secure for their clients. According to Mason, his lawyer's failure constitutes ineffec-

tive assistance of counsel. We decline to address this claim on direct appeal.

"We prefer appellants to raise [ineffective assistance of counsel] claims in a habeas proceeding because it permits the district judge first to decide whether the claim has merit, and second, if it does, to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted." *United States v. Molina*, 934 F.2d 1440, 1446 (9th Cir.1991) (quotation omitted). "We may, however, address the merits of an ineffective assistance of counsel claim on direct appeal if 'the record is sufficiently complete to allow us to decide the issue.'" *Id.* (quoting *United States v. O'Neal*, 910 F.2d 663, 668 (9th Cir.1990)).

The record in this case is not "sufficiently complete" to allow us to meaningfully assess whether Mason's lawyer's representation was deficient, or if it was, whether Mason was prejudiced thereby. Although the record confirms that the attorney was involved in a complex trial during the pretrial phase of Mason's case, it does not indicate that he was prevented from pursuing a potential plea bargain. Furthermore, nothing in the record demonstrates that the government would have been willing to plea bargain with Mason. The fact that the government plea bargained with other members of the drug organization does not show that it would have negotiated with Mason.

Because the current evidentiary record does not permit us to meaningfully address Mason's ineffective assistance claim, we refuse to address it in this direct appeal.

**2. Mason's *Faretta* Request**

On the morning of trial, Mason sought a continuance. When Judge Rafeedie de-

---

* The Honorable Paul R. Michel, Circuit Judge for the Federal Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

nied that request, Mason requested to appear pro se. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). After a lengthy dialogue, Judge Rafeedie denied Mason's request to represent himself. Mason claims that the district court erred by denying his request to represent himself. We disagree.

### a. Standard of Review

"We have not yet clarified whether denial of a *Faretta* request is reviewed de novo or for abuse of discretion." *United States v. Kaczynski,* 239 F.3d 1108, 1116 (9th Cir.2001) (citing *United States v. George,* 56 F.3d 1078, 1084(9th Cir.1995)). We need not decide which of these two approaches is correct because even under plenary review, Judge Rafeedie's decision was correct.

### b. Analysis

■ "[A] criminal defendant's assertion of his right to self-representation must be timely and not for purposes of delay; it must also be unequivocal, as well as voluntary and intelligent." *Kaczynski,* 239 F.3d at 1116. Considering all the circumstances fleshed out by the district court during the *Faretta* colloquy, we conclude that Mason's request was equivocal and was made for purposes of delay.

When Judge Rafeedie preliminarily granted Mason's request to represent himself, Mason immediately backpedaled, stating, "I wish not to, Your Honor." This is certainly not the type of unequivocal request we demand of a defendant seeking to waive his constitutional right to counsel. *See United States v. Hernandez,* 203 F.3d 614, 621 (9th Cir.2000); *United States v. Arlt,* 41 F.3d 516, 519 (9th Cir.1994); *Adams v. Carroll,* 875 F.2d 1441, 1444 (9th Cir.1989) ("If [the defendant] equivocates, he is presumed to have requested the assistance of counsel.").

As for "purposes of delay," the district court noted that Mason sought a continuance in conjunction with his *Faretta* request. However, Judge Rafeedie did not end his inquiry on that fact. Rather, consistent with our case law, the district court also considered "events preceding the motion" and "prejudice [to] the prosecution" in determining whether Mason's *Faretta* request was a ploy for delay. *See Fritz v. Spalding,* 682 F.2d 782, 784 (9th Cir.1982); *see also Armant v. Marquez,* 772 F.2d 552, 555–58 (9th Cir.1985). Judge Rafeedie observed that Mason, unlike his co-defendant, never filed any motion with the court indicating displeasure with his lawyer's representation. Mason did not "ma[k]e the same request over and over again, at nearly every opportunity." *See Adams,* 875 F.2d at 1444. Further, Judge Rafeedie pointed out that he had granted several continuances on prior occasions. Finally, Mason didn't move to proceed pro se until after the court refused to grant him a continuance on the morning of trial. Thus, Mason's request to represent himself appears to be "an impulsive response to the trial court's denial of his request" for a continuance. *See Jackson v. Ylst,* 921 F.2d 882, 888–89 (9th Cir.1990).

The record also firmly supports Judge Rafeedie's finding that a continuance "would be prejudicial to the prosecution." Government witnesses were already en route from Memphis to Los Angeles, and civilian witnesses had already made arrangements to travel to L.A. the next day.

For these reasons, we conclude that Mason's request to represent himself was equivocal and made for purposes of delay.

### 3. Mason's Prior Felony Drug Conviction

Pursuant to 21 U.S.C. § 851 (2000), the government filed an information alleging that in 1995, Mason pled guilty to possess-

ing cocaine with intent to distribute. Mason objected to the use of his prior conviction on three grounds. The district court rejected Mason's contentions.

### a. Standard of Review

We review de novo the legality of a criminal sentence. *United States v. Quan–Guerra*, 929 F.2d 1425, 1426 (9th Cir.1991). The district court's factual findings are reviewed for clear error. *United States v. Vea–Gonzales*, 999 F.2d 1326, 1328 (9th Cir.1993).

### b. Analysis

In his brief to this court, Mason claims that his prior conviction was invalid because the district court violated Fed. R. Crim P. 11 by (1) never formally asking him to enter a guilty plea; (2) failing to explain the nature of the charges to which he was pleading guilty; and (3) neglecting to inform Mason that he would be entitled to an attorney at trial. Mason claims also that (4) he received ineffective assistance of counsel because his attorney failed to explain a potential entrapment defense. None of these contentions has merit.[1]

### (1) Mason Actually Pled Guilty in 1995

Mason is correct that in 1995, the court never asked him "how do you plead?" However, the transcript of Mason's guilty plea colloquy demonstrates unmistakably that he intended to and did plead guilty. The district judge asked Mason if he intended to enter a plea of guilty, to which Mason responded, "Yes, Your Honor." Mason also acknowledged that by pleading guilty he was waiving certain constitutional rights. The court confirmed with Mason that he was pleading guilty

pursuant to a signed plea agreement which provided him substantial benefits. Finally, Mason agreed with the government's recitation of his involvement in the charged offense. Under these circumstances, it is clear that Mason intended to and actually did plead guilty even though he was never formally asked "How do you plead?" *See United States v. Grandia*, 18 F.3d 184, 187 (2d Cir.1994) ("[T]he district court's failure to specifically ask the defendant 'How do you plead?' is not necessarily fatal if, as here, it is clear from the facts and circumstances that the defendant intended to plead guilty, affirmatively admitted his guilt, stated that he was entering his plea voluntarily, and fully believed he was pleading guilty.").

### (2) The Court Adequately Explained the Nature of the Charges

Mason's claim that the district court did not adequately explain the nature of the charges fails for two reasons. First, Mason did not raise it before the district court, so he waived it. *See* 21 U.S.C. § 851(c)(2); *United States v. Van Doren*, 182 F.3d 1077, 1083 (9th Cir.1999). Second, the 1995 transcript demonstrates that the trial judge informed Mason of the factual predicate of the charged offense, the elements that must be proved, and the statutory penalties. In this manner, the judge ensured that Mason "possesse[d] an understanding of the law in relation to the facts." *United States v. Smith*, 60 F.3d 595, 597 (9th Cir.1995) (quotation omitted).

### (3) The Court Informed Mason of His Right to an Attorney at Trial

Mason's claim that the district court did not advise him of his right to

---

1. The government responds initially by arguing that 21 U.S.C. § 851 authorizes only constitutional challenges to a prior conviction. According to the government, a defendant's attack on a prior conviction predicated on a Rule 11 violation (e.g., Mason's first three

claims) is not cognizable under § 851. We decline to address this argument because even if we assume § 851 does allow Rule 11 challenges, Mason's claims fail on their merits.

have an attorney at trial also fails for two reasons. First, as with the prior argument, Mason's failure to raise the issue before the district court constitutes a waiver. *See* 21 U.S .C. § 851(c)(2). Second, the judge did advise Mason of his right to have an attorney at trial when she asked him: "Do you understand that at that trial ... your attorney would have an opportunity to cross-examine [the government's] witnesses, object to evidence that the government offered, and offer evidence on your behalf?" Mason answered, "Yes, Your Honor."

### (4) Mason's Counsel Was Not Ineffective

■ Mason claims that his prior conviction is invalid because his attorney did not discuss with him a possible entrapment defense. The record belies this claim. First, at the 1995 guilty plea colloquy, the judge asked Mason if he "had ample opportunity to discuss this matter with your attorney," and Mason answered affirmatively. Then, when the judge asked, "Are you satisfied with his advice and his representation of you," Mason answered, "Yes, Your Honor." "Solemn declarations in open court carry a strong presumption of verity." *United States v. Rubalcaba,* 811 F.2d 491, 494 (9th Cir.1987). Further, Mason never previously challenged his 1995 conviction either on direct appeal or in a collateral attack.

In sum, none of Mason's challenges to his prior conviction has merit. The district court properly considered that conviction in sentencing him.

### 4. Alleged *Apprendi* Error

Mason finally argues that his sentence is unconstitutional because it is based in part on a drug quantity determination made by the district court under the preponderance of evidence standard.

### a. Standard of Review

■ Mason did not object to the district court's drug quantity determination at the time of trial or sentencing, so we review this claim under the highly deferential plain error standard. *See United States v. Nordby,* 225 F.3d 1053, 1058–59 (9th Cir.2000). Plain error requires (1) error, (2) that was plain, and (3) that affected the defendant's substantial rights. *United States v. Olano,* 507 U.S. 725, 733–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). If these three conditions are met, we may reverse, but "only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 735.

### b. Analysis

■ Last year, the Supreme Court held that "[o]ther than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Applying the *Apprendi* rule to drug cases, we have held on several occasions that because a drug quantity finding may expose a defendant to an increased maximum penalty, it is the type of fact that must be alleged in the indictment, submitted to the jury, and proved beyond a reasonable doubt. *See United States v. Garcia–Guizar,* 234 F.3d 483, 488–89 (9th Cir.2000); *Nordby,* 225 F.3d at 1058–60.

Based on these cases—cases that were decided well after Judge Rafeedie sentenced Mason in this case—it is now plain that the district court erred by not instructing the jury that it had to find a specific drug quantity beyond a reasonable doubt. Despite this error, we need not reverse. Because the jury did not make an explicit finding as to drug quantity, the

statutory maximum to which Mason was exposed was 30 years. *See* 21 U.S.C. § 841(b)(1)(C).[2] Mason was actually sentenced to 240 months (20 years) in prison, ten years less than the thirty-year maximum to which he was subject. Under these circumstances, Mason's substantial rights were not affected. *See United States v. Scheele*, 231 F.3d 492, 497 n. 2 (9th Cir.2000).

AFFIRMED.

**AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Plaintiff–Counter–Defendant–Appellee,**

v.

**MELLON BANK (DE) NATIONAL AS-SOCIATION, Defendant–Counter–Claimant–Appellant.**

No. 99–56550.

D.C. No. CV–97–06785–CBM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 3, 2001.

Decided Aug. 23, 2001.

Before HUG, DUHÉ,* and TALLMAN, Circuit Judges.

---

**2.** If a defendant is convicted under § 841(b)(1)(C) *and* has a prior felony drug conviction, the statutory maximum is 30 years. *See* 21 U.S.C. § 841(b)(1)(C). As dis-

cussed above, Mason had a prior felony drug conviction.

* John M. Duhe Senior Judge for the United States Court of Appeals for the Fifth Circuit,

## MEMORANDUM **

Defendant–Appellant Mellon Bank (DE) National Association ("Mellon"), appeals the District Court's summary judgment that Mellon initiated termination of its contract (the "Club Agreement") with Plaintiff–Appellee Automobile Club of Southern California ("ACSC") to issue credit cards bearing the ACSC logo and the District Court's summary judgment awarding ACSC $8,502,488.91 in damages. Because we hold that the district court erred when it concluded that initiation of termination of the Club Agreement required notice under Sections 26 and 31, we reverse and vacate both summary judgments and remand.

## BACKGROUND

In 1990, the American Automobile Association ("AAA") concluded a contract (the "National Agreement") with Mellon allowing Mellon to issue credit cards bearing the emblems of some of AAA's local clubs. The National Agreement required that Mellon also execute separate agreements with the local AAA clubs interested in the credit card program. Accordingly, Mellon on August 1, 1992, entered into the Club Agreement with ACSC, a local AAA member, which allowed Mellon to issue credit cards displaying ACSC's trademark and tradename. The Club Agreement provides that interpretation of its provisions shall be governed by Delaware and applicable federal laws. The Club Agreement had an initial term of five years and automatically renewed for one year terms thereafter.

Section 31 elaborates Section 26(a)'s notice requirement for termination. Section 31 provides that any notice required or permitted under the Club Agreement must be in writing and hand-delivered or mailed by certified or registered mail. Section 31 also stipulates that any notice under the Agreement from ACSC to Mellon must, in order to be effective, be sent to a particular Wilmington, Delaware address and be copied to a particular Pittsburgh address.

In February 1995, AAA sought to form a financial services company ("FISCO") to channel financial services through some of its local clubs. AAA solicited Mellon's interest in FISCO through a Request for Proposal letter dated February 8, 1995, in which AAA asked Mellon if AAA's local clubs that had credit card agreements with Mellon could terminate their card agreements early in order that they might ink new agreements with FISCO. Responding to this letter, Mellon offered ACSC a proposed early termination agreement. ACSC did not sign it.

In January 1996, AAA decided to collaborate with PNC Bank ("PNC") in developing FISCO. Local AAA clubs wishing to participate in FISCO would, to gain their wish, have to conclude separate agree-

---

sitting by designation.