**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bruce SPEARMAN, Defendant–
Appellant.**

No. 00–1414.

United States Court of Appeals,
Sixth Circuit.

April 4, 2002.

Before JONES * and COLE, Circuit Judges; and GWIN, District Judge.**

GWIN, District Judge.

With this appeal, we examine whether the district court abused its discretion in denying Defendant–Appellant Bruce Spearman's motion to withdraw his guilty plea. In deciding this issue, we first examine an issue not directly raised by Spearman—whether the district court received a guilty plea when it never directly asked Spearman to plead guilty. We then review whether the trial court erred when it refused to allow the defendant to withdraw his plea.[1] Finally, we consider Appellant Spearman's request that we declare 21 U.S.C. § 841 (2000) and 21 U.S.C. § 846 (2000) unconstitutional in light of the U.S. Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

At the plea hearing, Spearman pleaded guilty to a single count of conspiracy to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Spearman sought to withdraw from his plea nine months after the plea hearing. After the trial court denied his motion to withdraw his appeal, the U.S. Supreme Court decided *Apprendi*. Spearman now asks the court to declare 21 U.S.C. § 841 unconstitutional as written and 21 U.S.C. § 846 unconstitutional as applied.

Finding that Spearman clearly manifested an intent to plead guilty, we do not vacate the judgment despite the trial court's less-than-clear plea questioning. As to Spearman's motion to withdraw the plea, we find the district court did not abuse its discretion in denying the motion. Additionally, we find 21 U.S.C. §§ 841 and 846 are constitutional in light of the U.S. Supreme Court's decision in *Apprendi*.

## I. Background

On March 26, 1997, the grand jury returned a three-count indictment against Spearman alleging criminal conduct in February 1997. The indictment charged Spearman with (1) conspiracy to possess with intent to distribute twenty-seven kilograms of cocaine from Miami, Florida, to Detroit, Michigan in violation of 21 U.S.C. § 846, (2) attempt to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a) and 846 and 18 U.S.C. § 2 (2000), and (3) use of a communication facility in committing a controlled sub-

---

* This opinion was submitted to the court prior to Judge Nathaniel R. Jones' departure from the court effective March 31, 2002.

** The Honorable James S. Gwin, U.S. District Judge for the Northern District of Ohio, sitting by designation.

1. As we describe, the trial court never specifically asked Spearman to state his plea of guilty. However, in discussing Spearman's claim that he should be able to withdraw from any plea finding, we treat his motion as an effort to withdraw from his plea.

stance offense in violation of 21 U.S.C. § 843(b) (2000).[2]

As described in the presentence report, the conspiracy involved transporting cocaine from Miami to Detroit for later distribution. Evidence of the conspiracy surfaced on February 26, 1997, when police stopped Willie Sykes and Willie Henning in Georgia and found twenty-seven kilograms of cocaine concealed in the walls of their van.

Sykes agreed to participate in a controlled delivery. He drove with a U.S. Drug Enforcement Administration agent to Detroit. When Sykes arrived in Detroit, he paged the person who was to pick up the cocaine. In response to the page, Appellant Spearman called Sykes, and they agreed to meet at a hotel a short time later.

After meeting Sykes at the hotel, Spearman directed Sykes to follow him to a location in northeast Detroit. Once at the location, Spearman exited the van and met briefly with Sykes and the undercover agent. Spearman re-entered the van and was arrested a short distance from the scene following a traffic stop.

The case against Spearman remained pending for more than two years. In part, this long delay resulted when Spearman skipped bond for nine months. Once Spearman was taken back into custody, the case awaited resolution for fifteen more months before a plea hearing was scheduled.

On May 10, 1999, the day his trial was to begin, Spearman appeared before the trial court to plead guilty. Under the plea agreement, Spearman was to plead guilty to one count of conspiracy to possess with intent to distribute twenty-seven kilograms of cocaine. In exchange, the government was to drop the other counts and recommend that his sentence not exceed 189 months. In addition, the government agreed that if Spearman provided "substantial assistance" in the investigation of others, it would move, under Section 5K1.1 of the U.S. Sentencing Guidelines, for a downward departure from the applicable sentencing guidelines to ninety-four months.[3]

During his plea colloquy, Spearman acknowledged that he was acting knowingly and voluntarily. As the factual basis for his plea, Spearman admitted receiving twenty-seven kilograms of cocaine from Michael Palmer, a co-defendant in Miami who supplied the cocaine transported by Sykes and Henning.

Although engaging in an exhaustive explication of Spearman's rights and the consequences of a guilty plea, the trial court neglected to follow two good practices when taking a plea under Rule 11 of the Federal Rules of Criminal Procedure. First, the trial court never asked Spearman to identify either his signature on the plea agreement or the date on which he executed it.[4]

More important, the trial court inexplicably never asked Spearman in open court

---

2. On April 22, 1998, a second superceding indictment added a fourth count of failing to appear in violation of 18 U.S.C. § 3146 (2000).

3. The government's agreement seems the kind of result-oriented approach disdained by the U.S. Sentencing Guidelines. *See Mistretta v. United States*, 488 U.S. 361, 366, 109 S.Ct.

647, 102 L.Ed.2d 714 (1989) (stating the goal of guidelines was to end the "great variation among sentences imposed by different judges upon similarly situated offenders").

4. The plea agreement contains a date opposite the Assistant U.S. Attorney's signature but it has no date opposite Spearman's signature.

what his plea was.[5] Instead, the district court simply professed itself satisfied that the written plea agreement conformed with Rule 11, and accepted it after the Rule 11 colloquy.

Spearman says that soon after the plea hearing, he told his attorney, Otis Culpepper, that he wanted to withdraw his plea. Although Spearman claims he formed his desire to withdraw the plea at an early stage, Spearman never brought that desire to the trial court's attention.[6] For reasons that are not clear, the trial court still had not sentenced Spearman nine months after he appeared for his plea. On February 23, 2000, while still awaiting sentencing, Spearman filed a pro se motion to withdraw his plea. Culpepper then filed his own motion to withdraw the plea.[7]

On March 29, 2000, at the hearing to withdraw the plea, Culpepper said that Spearman had consistently maintained his innocence. Culpepper also said he "insisted" that Spearman take a plea,[8] telling him the trial court would only accept the plea if there was sufficient basis for guilt.

The trial court denied the motion, finding no merit to Spearman's arguments supporting withdrawal of his plea. The trial court found that Spearman's previous statements under oath were sufficient to support the plea. The trial court also expressed concern that Spearman's attempt to withdraw his plea was an attempt to manipulate the court.

Immediately following the denial of his motion, the trial court sentenced Spearman to 189 months imprisonment. On April 5, 2000, Spearman filed a timely notice of appeal. He says the trial court erred when it denied his motion to withdraw his plea. He also challenges the constitutionality of 21 U.S.C. §§ 841 and 846 in light of *Apprendi.*

5. The better practice, of course, would have been to ask Spearman "how do you plead to the charge of conspiracy to possess with intent to distribute twenty-seven kilograms of cocaine in violation of 21 U.S.C. § 846?"

6. In the motion to withdraw Spearman's plea, his counsel related that Spearman feared the penalty he faced if he went to trial and was found guilty:

> Thus, confronted with substantial penalties, Defendant plead guilty to avoid the harsh sentences. Moreover, Defendant spent a great number of months between plea and sentence trying to reconcile his guilty plea against the penalty. However, with each postponement of the sentence, Defendant regretted his decision more and more. *Finally, Defendant informed his counsel that he wanted to withdraw his plea.*

(Joint Appendix at 66–67) (emphasis added).

7. Appellant counsel says Spearman's pro se motion and brief to withdraw the plea were filed on February 23, 2000 and Culpepper's supplementary brief in support was filed on March 20, 2000. However, the date stamps on those documents indicate the two documents were filed in the opposite order. (Joint Appendix at 63, 79). However, the government's response to Spearman's motion to withdraw states he made a pro se motion on February 23, 2000. (Joint Appendix at 69). We therefore assume Spearman first made a pro se motion to withdraw his plea that was later supported by a motion and brief filed by Culpepper.

8. From the plea withdrawal hearing:

> MR. CULPEPPER: That plea—and I think just to tell the Court candidly, that plea came about as a result of conversations I had over and over with the defendant, because I personally was not—had looked at the evidence and I had—really, I had real problems conceiving how we could win. The defendant, however, steadfastly maintained that he was innocent, steadfastly maintained that there were—that the case was winnable. It was only under my—I won't call it my insistence, I won't call it pressure, my insistence that the defendant plea.

(Joint Appendix at 118).

## II. Plea Procedure

██ We first comment on Spearman's initial guilty plea. Rule 11 of the Federal Rules of Criminal Procedure directs that pleas be taken in open court after inquiry to ensure the defendant's knowing waiver of his rights and acceptance of the plea:

> A verbatim record of the proceedings *at which the defendant enters a plea* shall be made and, if there is a plea of guilty or nolo contendere, the record shall include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea including any plea agreement, and the inquiry into the accuracy of a guilty plea.

Fed.R.Crim.P. 11(g) (emphasis added).

As earlier described, on May 10, 1999, the trial court conducted a plea hearing with Spearman. During the hearing, the trial court properly outlined the nature of the crime, the possible penalty, the nature of the plea agreement, the rights Spearman would give up, and the consequences of any failure to cooperate, as required by the plea agreement. However, the trial court did not specifically ask Spearman to state his plea to the charge of conspiracy to possess with intent to distribute and to distribute cocaine. The trial court also did not ask Spearman to confirm he executed the proffered plea agreement.[9]

In taking a plea, the better course is to explicitly ask a defendant to state his plea. However, a guilty plea will not fail on the absence of an express declaration of guilt if the language used is expressive of the defendant's culpability. *See, e.g., United States v. Williams*, 20 F.3d 125, 133–34 (5th Cir.1994) (holding that a defendant entered a valid guilty plea when he answered that he committed the charged offenses even though he did not expressly say "I am guilty"); *United States v. Grandia*, 18 F.3d 184, 187 (2d Cir.1994) ("[T]he district court's failure to specifically ask the defendant 'How do you plead?' is not necessarily fatal if, as here, it is clear from the facts and circumstances that the defendant intended to plead guilty").

While inartful, we find that the trial court's plea procedure obtained a clear expression that Spearman intended to plead guilty. Therefore, Spearman entered a guilty plea.

## III. Motion to Withdraw the Plea

We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir.1996).

Rule 32(e) of the Federal Rules of Criminal Procedure provides "[i]f a motion to withdraw a plea of guilty ... is made before sentence is imposed, the court may permit the pleas to be withdrawn if the defendant shows any fair and just reason." The aim of this rule is:

> to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant "to make a tactical decision to enter a plea, wait several weeks, and then obtain a

---

9. At the plea hearing, the nearest Spearman came to acknowledging guilt came in response to a boilerplate question asked in order to confirm that he would not continue to deny guilt after his plea. The trial court asked:

> Q. Are you pleading guilty, sir, freely and voluntarily because this is your own decision?
> A. Yes, sir.
> Q. Are you pleading guilty, sir, because you are, in fact, guilty of the charges in Count One of the Second Superseding indictment?
> A. Yes, sir, your Honor.

(Joint Appendix at 109).

withdrawal if he believes that he made a bad choice in pleading guilty."

*United States v. Alexander,* 948 F.2d 1002, 1004 (6th Cir.1991) (quoting *United States v. Carr,* 740 F.2d 339, 345 (5th Cir.1984)). The defendant bears the burden of showing a fair and just reason exists to withdraw the plea. *See Bazzi,* 94 F.3d at 1027.

"[A] defendant who expressly represents in open court that his guilty plea is voluntary 'may not ordinarily' repudiate his statements to the sentencing judge." *United States v. Todaro,* 982 F.2d 1025, 1030 (6th Cir.1993) (citing *Fontaine v. United States,* 411 U.S. 213, 215, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973)). Assuming the court follows the required procedure, his statements to the court bind a defendant. *See Baker v. United States,* 781 F.2d 85, 90 (6th Cir.1986). The "voluntariness" of a defendant's plea is determined by the totality of the circumstances surrounding the plea. *Garcia v. Johnson,* 991 F.2d 324, 327 (6th Cir.1993).

The court considers several factors in deciding whether a defendant has shown a fair and just reason to set aside an otherwise valid plea:

(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the gov-

ernment if the motion to withdraw is granted.

*United States v. Bashara,* 27 F.3d 1174, 1181 (6th Cir.1994).

These factors are a nonexclusive list and no one factor is controlling. *Bazzi,* 94 F.3d at 1027. The government need not come forward with evidence that the plea withdrawal will prejudice it until the defendant shows fair and just reasons in support of withdrawing his plea. *United States v. Gray,* 152 F.3d 816, 819 (8th Cir.1998) (stating there is no need to examine other factors when a defendant does not present a fair and just reason for withdrawing a guilty plea); *United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997) (stating the government need not demonstrate prejudice when the defendant fails to show sufficient grounds justifying withdrawal of a guilty plea).

■ Spearman says the trial court abused its discretion by denying his motion to withdraw his guilty plea. He says the trial court denied the motion because it believed the plea agreement was in Spearman's best interest. In doing this, Spearman says the trial court ignored his claim that his trial counsel "cajoled" him into pleading guilty.

Culpepper supports Spearman's claim. At the hearing, Culpepper indicated he "cajoled" Spearman into entering a guilty plea.[10] Spearman argues that being cajoled into pleading guilty constitutes a fair and just reason for withdrawing his plea.

Spearman further argues that immediately after he entered the guilty plea he told Culpepper that he wanted to withdraw it. Culpepper supports this argument,

---

**10.** At the hearing on the motion to withdraw the plea:

THE COURT: Now all you're doing is coming in and telling me that Mr. Spearman never wanted to plead guilty in the first place,

that you cajoled him. I do not say coerced, that you cajoled him to pleading guilty.
MR. CULPEPPER: I think that's fair.
(Joint Appendix at 125).

saying he argued against withdrawing the plea because he thought Spearman's chance of acquittal was slight. Culpepper stated at the hearing that their disagreement led to the delayed filing.[11]

Finally, Spearman argues a plea withdrawal would not prejudice the government. The trial court agreed as much, stating it was "quite confident the Government would come forward with more than sufficient witnesses who would be willing to testify to Mr. Spearman's involvement in th[e] conspiracy." (Joint Appendix at 134).

We find Spearman's arguments unpersuasive. As mentioned by the trial court, Spearman's six prior convictions made him an experienced participant in the criminal justice system. The trial court found nothing in his Rule 11 plea colloquy suggesting Spearman's plea was not voluntary.

I am telling you, sir, that when a person stands up in front of me under oath, tells me they understand they're under oath, tells me they committed a crime[,] makes out the elements of that crime in detail, I am going to believe them. And I'm not going to allow them to come into Court and manipulated [sic] the justice system.

(Joint Appendix at 144).

The record supports the trial court's finding. During the motion hearing, as well on appeal, Spearman focuses primarily on his off the record assertion of innocence that he says Culpepper eroded by pressuring him to plead guilty. This assertion is simply unsupported. The following exchange took place at the plea hearing:

THE COURT: Are you satisfied with the advice you've gotten from your lawyers?

THE DEFENDANT: Yes, I am.

THE COURT: Are you satisfied with the services in general that they've given to you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any complaints about either of their representation that you want to bring to my attention at this time?

THE DEFENDANT: No, sir.

(Joint Appendix at 91). Moreover, during the motion hearing, the trial court recognized that Culpepper's advice to Spearman was entirely appropriate.[12]

---

11. At the hearing on the motion to withdraw the plea:

THE COURT: Why did he wait nine months?
MR. CULPEPPER: He didn't. It was—it was his—it was me who caused that delay, because I kept insisting that we go through with this, quite honestly, because I kept telling him you got an opportunity to get 9 years at a minimum as opposed to forever.
He argued with me, I argued back. It never was done until I finally said, in fact—as a matter of fact, it got to the point where I indicated that my advice seems not to be taken here.
I relented and put in—and he put in his own motion and I refused to acknowledge that.
(Joint Appendix at 122–23).

12. At the hearing on the motion to withdraw the plea:

MR. CULPEPPER: I'm not saying that I suborned you, I'm telling you what I tell—what I'm telling you is I instructed him on what had to be said in order for this plea to be accepted.
THE COURT: That doesn't mean anything to me. I assume you told him he had to make out the elements of the case for me to accept this plea.
MR. CULPEPPER: I said unless you give the good judge a sufficient basis to establish guilt in this case, he will not accept the plea.
THE COURT: That's absolutely true. If you gave him that advise [sic], you did exactly what a lawyer should do.
(Joint Appendix at 120).

In addition, the trial court took great pains to ensure that Spearman understood what he was doing at the plea hearing.

THE COURT: And do you understand that I will not permit you to withdraw your guilty plea if I do sentence above ninety-four months; do you understand that?

THE DEFENDANT: Yes, sir.

. . . .

THE COURT: Have any other promises been made to you by anyone, by Mr. Culpepper, Ms. Jacobs, Mr. Scott, by me, by anybody?

THE DEFENDANT: No, sir.

THE COURT: Has anyone tried to force you, or mistreated you, or pressured you in any way in order to get to you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Has anybody told you that the Court would be more lenient if you pled guilty?

THE DEFENDANT: No, sir.

THE COURT: Except for what's been stated here in open court, there are no promises that have been made to you, and no threats of any kind; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Are you pleading guilty, sir, freely and voluntarily because this is your own decision?

THE DEFENDANT: Yes, sir.

(Joint Appendix at 106–09).

In addition, other of the factors listed in *Bashara* weigh against granting Spearman's motion to withdraw his guilty plea. The nine months that elapsed between Spearman's guilty plea and his attempt to withdraw his plea strongly support denying the motion. *See United States v. Durham*, 178 F.3d 796, 798–99 (6th Cir.1999) ("The strongest factor supporting the district court's denial of Durham's motion is the length of time between Durham's plea and the filing of his motion to withdraw. Durham waited approximately seventy-seven days to file his motion after entering his guilty plea."); *United States v. Pluta*, 144 F.3d 968, 973–74 (6th Cir.1998) (stating that a four month delay does not favor granting motion to withdraw a guilty plea); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir.1996) (calling a sixty-seven-day delay and the defendant's failure to justify the delay the strongest factors supporting denial of the motion to withdraw the guilty plea); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir.1988) (describing a fifty-five-day gap as a "lengthy delay").

The second *Bashara* factor also weighs against allowing Spearman to withdraw his plea. Spearman offers no justification for the delay other than the continued advice of his counsel. While there is evidence Culpepper recommended against trying to withdraw the plea, Spearman shows no other reason preventing him from approaching the court. Disagreement with one's attorney is not a valid reason for failing to move for withdrawal of a plea earlier in the proceedings.

In light of the voluntariness of Spearman's initial guilty plea and the additional findings of the trial court, we hold that the trial court did not abuse its discretion when it found Spearman had no "fair and just reason" to withdraw his plea.

### III. Constitutionality of 21 U.S.C. §§ 841 and 846 in light of *Apprendi*

■ Next, Spearman says the Supreme Court's decision in *Apprendi* makes 21 U.S.C. §§ 841 and 846 unconstitutional because the statutes do not include the quantity of drugs as an element of the crime. Spearman's constitutional challenge, as an issue of law, is reviewed de novo. *See United States v. Bender*, 265 F.3d 464, 469 (6th Cir.2001).

The appellant's argument appears to be as follows: the Sixth Circuit, along with the other circuits, have routinely ruled that a drug amount is a sentencing factor and not an element of an offense. Sentencing factors can be decided by a judge under a preponderance of the evidence standard. The *Apprendi* Court held that any fact increasing a sentence above the statutory maximum is an element of the offense, and thus it is unconstitutional for a judge to find that issue under a preponderance of the evidence standard. To comply with *Apprendi*, Spearman argues courts would improperly need to rewrite the drug statutes to change the drug quantity from a sentencing factor to an element of the offense. Spearman contends the courts should not judicially rewrite statutes in order to save them.

Once again, the appellant's argument is without merit. While Congress may not have intended the drug quantity to be an element of the offense, nothing prevents the court from enforcing the current drug statutes with the procedural safeguards required by *Apprendi*.

*Apprendi* does not invalidate statutes that contain special sentence enhancements as if they were elements. "[W]hen the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent · of an element of a greater offense than the one covered by the jury's guilty verdict." *Apprendi*, 530 U.S. at 494 n. 19, 120 S.Ct. 2348. The Sixth Circuit has taken such an approach with the sentencing factors found in the drug statutes, concluding that "[b]ecause the provisions at issue are factual determinations and because they increase the maximum penalty to which [the defendant] was exposed, we find that they are elements of the offense which must be proven beyond a reasonable doubt." *United States v. Rebmann*, 226 F.3d 521, 524–25 (6th Cir. 2000).

Convincingly, the appellee points out that the Sixth Circuit, as well as other circuits that have considered drug statute sentencing cases post-*Apprendi*, have applied the new procedural requirements instead of striking down the statutes as unconstitutional. The courts have taken this approach regardless of whether they viewed drug quantity as an element or as a sentencing factor. *See, e.g., United States v. Buckland*, 277 F.3d 1173, 1180–82 (9th Cir. Jan.18, 2002) (en banc) (upholding the constitutionality of 21 U.S.C. § 841, the Ninth Circuit said *Apprendi*'s holding has stripped pre-*Apprendi* decisions committing determination of drug quantity to a judge for a finding under the preponderance standard of their precedential value); *United States v. Meshack*, 225 F.3d 556, 575–77 (5th Cir.2000) (affirming some sentences and remanding others for re-sentencing); *United States v. Sheppard*, 219 F.3d 766 (8th Cir.2000) (concluding that *Apprendi* requires drug quantity to be treated as an element of a § 841 offense, but found that omission was harmless error because the trial court asked the jury to make a "special finding" with respect to drug quantity).

While the *Apprendi* decision changes the procedure used to determine the quantity of drugs involved in an offense, the shift does no violence to the statutes involved and comports with the Constitution.[13] We hold that 21 U.S.C. §§ 841 and 846 are constitutional.

## IV. Conclusion

At his plea hearing, the district court obtained a clear expression from Spear-

---

**13.** The Ninth Circuit held as much in its recent en banc decision.

Our aim remains to give effect to Congress's intent. That intent is apparent: to

man that he intended to plead guilty. The district court did not abuse its decision in denying Spearman's motion to withdraw his guilty plea. Furthermore, we find that 21 U.S.C. §§ 841 and 846, the statutes under which Spearman was sentenced, are constitutional.

The judgment of the U.S. District Court for the Eastern District of Michigan in case 00–1414 is AFFIRMED.

ramp up the punishment for controlled substance offenders based on the type and amount of illegal substance involved in the crime. We honor the intent of Congress and the requirements of due process by treating drug quantity and type, which fix the maximum sentence for a conviction, as we would any other material fact in a criminal prosecution: it must be charged in the indictment, submitted to the jury, subject to the rules of evidence, and proved beyond a reasonable doubt.

*Buckland,* 277 F.3d at 1182. While we do not go as far to adopt *Buckland'*s procedural requirements for proving drug quantity, we note that charging the drug quantity in the indictment and submitting the amount to the jury certainly meets *Apprendi'*s requirements.