# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
January 5, 2010 Session

## JEFFERY AARON LANE v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Sullivan County**
**No. C51,609    R. Jerry Beck, Judge**

---

**No. E2007-00032-SC-R11-PC - Filed July 14, 2010**

---

We review this post-conviction case to determine the validity of defendant's guilty plea when the trial court did not specifically ask the defendant "How do you plead?" and he did not respond with the words, "Guilty" or "Not guilty." We hold that the defendant's guilty plea was valid because the facts and circumstances of the case show that the defendant intended to plead guilty, affirmatively admitted his guilt, stated that he was entering his plea voluntarily, and believed that he was pleading guilty. Accordingly, the defendant knowingly and voluntarily entered a guilty plea, and the guilty plea proceedings in this case substantially complied with the mandates of federal and state law. Therefore, the judgment of the Court of Criminal Appeals is reversed, and we remand for reinstatement of the defendant's conviction under the accepted plea agreement.

### Tenn. R. App. 11 Appeal by Permission
### Judgment of the Court of Criminal Appeals Reversed; Case Remanded

SHARON G. LEE, J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; John H. Bledsoe, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and James F. Goodwin, Assistant District Attorney General, for the appellant, State of Tennessee.

Jason R. McLellan, Kingsport, Tennessee, for the appellee, Jeffery Aaron Lane.

# OPINION

## Factual and Procedural History

On July 12, 2005, the defendant, Jeffery Aaron Lane, entered into a negotiated plea agreement with the State in which he agreed to plead guilty to one count of identity theft in exchange for the State's recommended sentence of seven years as a Range II, multiple offender. Prior to the guilty plea hearing, the defendant signed and submitted to the Court a completed "Request for Acceptance of Plea of Guilty Waiver of Rights" and "Waiver of Rights and Consent to Apply Criminal Sentencing Reform Act of 1989" ("the Blakely Waiver") forms.

At the guilty plea hearing, the trial court conducted an extensive colloquy with the defendant. The trial court first advised the defendant of his constitutional right against self-incrimination and informed him that if he answered a question falsely, he could be charged with perjury. The trial court then described the crime of identity theft, both in statutory and colloquial terms. The trial court next described the range of punishment, including incarceration and fines, for such an offense as well as the meaning of "Range II Offender" and how this designation could affect the defendant's sentence. The trial court informed the defendant concerning the various rights the defendant was giving up by pleading guilty, such as the right to vote, hold public office, and possess a firearm. The trial court also mentioned that a guilty plea could create "other disabilities" which could affect the defendant. The trial court asked if the defendant understood the sentence he agreed to in the Plea Agreement. The defendant responded affirmatively. The trial court then summarily ensured that the defendant understood the nature of the charges against him, the potential range of punishment, and the plea agreement in his case. The defendant affirmed that he understood.

Following this exchange, the trial court described the United States Supreme Court's holding in Blakely v. Washington, 542 U.S. 296 (2004), before reading the Blakely Waiver in its entirety. The trial court received an affirmation from the defendant that he understood that he was waiving the rights afforded him by Blakely. The trial court also verified that the defendant had an attorney and that the defendant knew that he was entitled to representation by an attorney throughout the proceedings.

The trial court reiterated these rights and more during the next exchange in which it asked the defendant if he was "knowingly and voluntarily" giving up his rights to a jury trial, to compulsory process for witnesses, to confronting witnesses, and against self-incrimination. After stating each right, the trial court asked whether the defendant knew what each right was. The trial court asked the defendant again if he was "knowingly and voluntarily giving up all of those rights." The defendant responded, "Yes, sir."

-2-

The trial court next described the defendant's rights if the case went to trial, including the State's burden to prove every element of the offense beyond a reasonable doubt and the defendant's right not to testify, which would not "diminish the presumption of innocence" that he had. The trial court also informed the defendant that his guilty plea would be used to impose a longer sentence should the defendant be convicted of a new offense in the future. The defendant stated that he understood such an effect.

The State then provided a detailed description of the facts, and the defendant's attorney verified that he had had an opportunity to discover the State's case and was convinced that the State could produce witnesses to testify to the facts as stated. The trial court also ensured that these facts were "all true and correct" according to the defendant. The trial court accepted the stipulation of fact, finding that "a reasonable trier of fact . . . could find the Defendant guilty by use of [the] beyond a reasonable doubt standard." The trial court then questioned the defendant's mental capacity to plead guilty and his attorney's service to him. Following these questions and affirmative responses, the trial court asked:

> THE COURT: Do you understand that Mr. Harrison [Mr. Lane's attorney] cannot make the decision to plea[d] guilty or not guilty? You are the only person in the whole world that can make that decision.
>
> MR. LANE: Yes, sir, Your Honor.
>
> THE COURT: And is it your free and voluntary decision to plead guilty?
>
> MR. LANE: Yes, sir, Your Honor.

After this colloquy, the trial court asked whether the defendant had been threatened into waiving his rights by pleading guilty, to which the defendant responded negatively. The trial court also asked whether the defendant authorized his attorney to negotiate with the district attorney to resolve his case, to which the defendant responded affirmatively. The trial court again asked the defendant separate questions regarding whether he signed, read, understood, and went over with his attorney the Defendant's Waiver of Rights, the Blakely Waiver, and the plea negotiation agreement. The defendant answered all of these questions affirmatively, and his attorney verified that they had "[gone] over everything."

The remainder of the hearing was devoted to procedural matters, primarily setting a date for a sentencing hearing and the trial court describing what would occur before and during that hearing. The trial court told the defendant that because the State was not

recommending probation, the trial court would "have to have a sentencing hearing at a later date to determine whether or not you make probation or alternative sentencing" and that that date would depend on preparation of "the report." The defendant stated that he would wait to make a statement at the sentencing hearing. The defendant was placed on bond. The trial court issued an "Order Accepting Plea of Guilty" the same day, which was signed by the trial court, counsel for the State and the defendant, and the defendant.

Throughout the colloquy, the trial court asked the defendant, "Do you understand that?" to which the defendant variously replied, "Yes, sir, Your Honor" and "Yes, Your Honor." Additionally, the trial court would verify that the defendant waived his enumerated rights. However, the trial court did not specifically ask the defendant "How do you plead?" and, therefore, the defendant failed to state "Guilty" or "Not guilty."

On October 28, 2005, the defendant was sentenced to seven years in confinement at thirty-five percent in accordance with the plea agreement. Following his sentencing, the defendant petitioned for post-conviction relief on the basis of ineffective assistance of counsel.[1] During the post-conviction relief hearing on this motion, a videotape of the guilty plea was played, and the court determined that it had not asked the defendant "How do you plead?" Accordingly, the defendant filed an amended petition, arguing that, because he did not plead guilty in open court, the guilty plea should be vacated as it was involuntarily and unknowingly entered.

During the second post-conviction hearing, held on December 13, 2006, the defendant testified that he signed both the "Request for Acceptance of Plea of Guilty Waiver of Rights" form and the Blakely Waiver form. The defendant acknowledged that his trial attorney explained the forms to him as well as his right to plead not guilty and proceed to trial by jury without being compelled to testify. The defendant further testified that there was no agreement as to alternative sentencing and that this guilty plea could be used to enhance future punishment.

---

[1] In his pro se petition for post-conviction relief, the defendant alleged that the statute of limitations had expired when an arrest warrant was issued for him and that his counsel failed to challenge the indictment for not containing facts regarding the tolling of the statute of limitations. He also listed "Conviction was based on unlawfully induced guilty plea or guilty plea involuntarily entered without understanding of the nature and consequences of the plea" as a possible ground for relief in addition to denial of effective assistance of counsel. The defendant filed a motion for appointment of counsel, which the trial court granted. The State responded to the petition for post-conviction relief, arguing that defense counsel and the defendant discussed the statute of limitations issue prior to the taking of the guilty plea. The defendant's appointed counsel filed an "Amended Petition for Post-Conviction Relief" expanding on the defendant's statute of limitations argument. The State issued a response.

The State then went through the transcript of the guilty plea hearing with the defendant. The defendant acknowledged that at the time of the guilty plea hearing he understood his rights at trial and the consequences of giving up those rights by pleading guilty. The defendant further confirmed that he stated "Yes" when asked whether he freely and voluntarily decided to plead guilty as well as when asked whether he read, understood, and signed the "Request for Acceptance of Plea of Guilty Waiver of Rights" form. The State then asked, "[a]nd at the end of that discussion between the judge and you, you understood, when you walked out of the courtroom that day, that you ha[d] pled guilty." The defendant responded: "To my understanding?" The State answered affirmatively, and the defendant nodded his head "Yes." On cross-examination by his appointed attorney, the defendant stated that he did not know how he would have responded had the trial court asked him how he pled at the guilty plea hearing.

The post-conviction court found that identity theft was a "continuing crime" such that the statute of limitations had not run when the arrest warrant for the defendant was filed. The post-conviction court also discredited the defendant's testimony that he did not know how he would have responded had he been asked how he pled. However, the post-conviction court granted the defendant post-conviction relief on the basis of its "error" in "not entering [or] taking an oral plea and not pronouncing a judgment orally." Despite finding that "[i]t is clear and beyond any doubt petitioner received the sentence he had bargained for from the district attorney and that the court substantially complied with Rule 11 Tenn. R. Crim. P.," the post-conviction court set aside the defendant's conviction because the "error would not fall within a harmless error category." The State appealed this decision. The Court of Criminal Appeals affirmed, holding that "a defendant's entry of a plea of guilty and the trial court's acceptance thereof," not "solely . . . an intent to enter a plea of guilty," constitute a conviction. Lane v. State, No. E2007-00032-CCA-R3-PC, 2009 WL 230859, at *7 (Tenn. Crim. App. Feb. 2, 2009).

**Issue**

The issue presented for our review is whether the defendant's plea of guilty was valid. We hold that the defendant's guilty plea was valid because, under the facts and circumstances of this case, he knowingly and voluntarily entered a guilty plea and the trial court substantially complied with the mandates of federal and state law. Accordingly, we reverse the judgment of the Court of Criminal Appeals and remand to the trial court to reinstate the defendant's conviction and sentence.

**Analysis**

**Waiver**

The State argues for the first time in its brief that the defendant waived his challenge to the validity of the guilty plea by failing to raise the issue in direct appeal. The State did not present this issue for review by the court in its application for permission to appeal. Accordingly, we address this issue only to the extent that we reiterate our holding in Walsh v. State, 166 S.W.3d 641 (Tenn. 2005), that by raising waiver for the first time in this Court, "the State's waiver argument has itself been waived." Id. at 645. The Walsh Court stated that "[i]ssues not addressed in the post-conviction court will generally not be addressed on appeal." Id. at 645-46 (citing Rickman v. State, 972 S.W.2d 687, 691 (Tenn. Crim. App. 1997); State v. White, 635 S.W.2d 396, 397-98 (Tenn. 1982) ("rejecting an argument presented by the State for the first time on appeal")). As in Walsh, where the defendant failed to raise the issue of improper influence on the jury during his direct appeals, the State in this case "has denied the petitioner an opportunity to rebut the presumption that this issue has been waived." Id. at 645 (citing Tenn. Code Ann. § 40-30-110(f) (2003) (providing that "[t]here is a *rebuttable presumption* that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived")). Thus, this issue has been waived.

**Validity of the Guilty Plea**

The validity of a guilty plea is a mixed question of law and fact. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003) ("Whether a guilty plea meets the constitutional standards of voluntary and knowing is a mixed question of law and fact"). We review mixed questions of law and fact de novo. Id.; Pylant v. State, 263 S.W.3d 854, 867-68 (Tenn. 2008). Unless the evidence preponderates against the post-conviction court's findings of fact, the factual findings are conclusive on appeal. Jaco, 120 S.W.3d at 830; Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009). In post-conviction proceedings, a petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006); Grindstaff, 297 S.W.3d at 216. "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" Grindstaff, 297 S.W.3d at 216 (quoting Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). The post-conviction court's conclusions of law are given no presumption of correctness. Id.; Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009).

In order for a guilty plea to be valid, it must be entered knowingly, voluntarily, and intelligently. State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); see North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969). If a guilty plea is not so entered, the defendant

has been denied due process and the guilty plea is void. Boykin, 395 U.S. at 243 n.5 (quoting McCarthy v. United States, 394 U.S. 459, 466 (1969)); State v. Mellon, 118 S.W.3d 340, 345 (Tenn. 2003). To determine whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must look to "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Grindstaff, 297 S.W.3d at 218 (quoting Jaco, 120 S.W.3d at 831). Some factors to consider in making this determination include:

> (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993)).

Specifically, a voluntary plea is one in which the defendant understands the consequences of his or her plea, Mellon, 118 S.W.3d at 345 (quoting United States v. Stubbs, 279 F.3d 402, 411 (6th Cir. 2002)), and the law in relation to the facts, Blankenship, 858 S.W.2d at 903 (quoting McCarthy, 344 U.S. at 466). Thus, a plea is not voluntary if it results from "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" Blankenship, 858 S.W.2d at 904 (quoting Boykin, 395 U.S. at 242-43). A defendant's voluntary relinquishment of his or her fundamental rights, including the right to a trial by jury, the right against self-incrimination, and the right to confront his or her accusers, cannot be presumed but must be evident in the record. Mellon, 118 S.W.3d at 345 (citing State v. Blackmon, 984 S.W.2d 589, 591 (Tenn. 1998)); Mackey, 553 S.W.2d at 340; see Boykin, 395 U.S. at 243 ("We cannot presume a waiver of these three important federal rights from a silent record"). Thus,

> the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an "intentional [relinquishment or] abandonment of a known right [or privilege]."

Mackey, 553 S.W.2d at 340 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). To ensure that the defendant entered a plea "knowingly" and "intelligently," the court must "canvass[ ] the matter with the accused to make sure that he has a full understanding

of *what the plea connotes* and of *its consequences*." Blankenship, 858 S.W.2d at 904 (quoting Boykin, 395 U.S. at 244).

In Tennessee, to ensure that guilty pleas are voluntarily, knowingly, and intelligently entered, Tennessee Rule of Criminal Procedure 11 sets forth, in part, the requirements for guilty pleas. Before accepting a guilty plea, the trial court must

> address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:
>
> (A)  The nature of the charge to which the plea is offered;
> (B)  the maximum possible penalty and any mandatory minimum penalty;
> (C)  if the defendant is not represented by an attorney, the right to be represented by counsel–and if necessary have the court appoint counsel–at trial and every other stage of the proceeding;
> (D)  the right to plead not guilty or, having already so pleaded, to persist in that plea;
> (E)  the right to a jury trial;
> (F)  the right to confront and cross-examine adverse witnesses;
> (G)  the right to be protected from compelled self-incrimination;
> (H)  if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence; and
> (I)  if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury.

Tenn. R. Crim. P. 11(b)(1).[2]

_____

[2] This current version of Rule 11 is substantively the same as the version applicable at the time of the defendant's guilty plea hearing. In 2005, Rule 11(c) read, in pertinent part:

> (1)  The nature of the charge to which the plea is offered, the mandatory

Rule 11 also requires that the trial court determine that the plea is "voluntary and is not the result of force, threats, or promises," other than the promises in the plea agreement. Tenn. R. Crim. P. 11(b)(2). Rule 11 further requires the trial court to inquire "whether the defendant's willingness to plead guilty results from prior discussions between the district attorney general and the defendant or the defendant's attorney." Id. Moreover, the trial court must ensure that there is a factual basis for the plea. Tenn. R. Crim. P. 11(b)(3).

In addition to these enumerated Rule 11 requirements, Tennessee law requires a trial court to inform a defendant and ensure that he or she understands that different or additional punishment may result from his or her guilty plea due to the defendant's prior convictions or other factors and that the resulting conviction may be used to enhance punishment for subsequent convictions. Howell, 185 S.W.3d at 331 (citing State v. Neal, 810 S.W.2d 131, 136 (Tenn. 1991), overruled in part on other grounds by Blankenship v. State, 858 S.W.2d 897 (Tenn. 1993)); see State v. McClintock, 732 S.W.2d 268, 273 (Tenn. 1987); Mackey, 553 S.W.2d at 341.

---

minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

(2) If the defendant is not represented by an attorney, that he or she has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed; and

(3) That the defendant has the right to plead not guilty or to persist in that plea if it has already been made, and the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right against compelled self-incrimination; and

(4) That if the defendant pleads guilty or nolo contendere there will not be a further trial of any kind except as to sentence so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) That if the defendant pleads guilty or nolo, the court may ask the defendant questions about the offense to which he or she has pleaded, and if the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or false statement.

In 2006, Rule 11 changed to its current format. In 2007, Rule 11(b)(1)(I) was changed to reflect the new offense of aggravated perjury.

Literal compliance with the above advice to be given a defendant by a trial judge during a guilty plea hearing is not required. Neal, 810 S.W.2d at 137. Rather, a trial court must substantially comply with the required advice. Id.; State v. Newsome, 778 S.W.2d 34, 38 (Tenn. 1989) ("The rule in Mackey requires trial judges in accepting pleas of guilty in criminal cases to adhere, *substantially* to the procedure prescribed. We consider that requirement to relate to Criminal Procedure Rule 11 as well."). A trial court "substantially complies with these mandates when it expresses the sense of the substance of the required advice to a defendant who is seeking to plead guilty." Howell, 185 S.W.3d at 331 (citing Neal, 810 S.W.2d at 137). For instance, "[i]t is substantial compliance if the sense of the rights and information set out in the litany is completely stated to the guilty-pleading defendant, on the record, even though the trial judge does not use the exact script suggested." Neal, 810 S.W.2d at 137. Accordingly, substantial compliance is not less than full compliance with the federal and Tennessee requirements. Id. Further, substantial compliance is not error. Id. at 138. "Where there is substantial compliance the root purpose of the prescribed litany has been served and the guilty plea passes due process scrutiny because it was made voluntarily and understandingly." Id.

Where there has been substantial compliance, there is not an omission. Id. at 139. Where there is a "patent omission[ ]" from the advice litany, it is error. Id. at 138. The court then reviews the plea for harmless error. Id.; State v. Frazier, 784 S.W.2d 927, 928 (Tenn. 1990); Newsome, 778 S.W.2d at 38. The level of harmless error review depends upon whether the omission constitutes a constitutional error or whether the required advice derives from a rule or pronouncement based on the supervisory authority of this Court. Neal, 810 S.W.2d at 139. If the former, the judgment is void unless the error is harmless beyond a reasonable doubt. Id. If the latter, the judgment will be void only if the defendant can show prejudice from the omission. Id.

The facts of this case are not unique but are rare. This Court has never before addressed whether a trial court's failure to ask a defendant "How do you plead?" and a defendant's concomitant failure to respond "Guilty" affects the validity of a guilty plea. However, other jurisdictions have addressed this question. In the leading case concerning this factual scenario, United States v. Grandia, 18 F.3d 184 (2d Cir. 1994), the trial judge conducted an "extensive colloquy" much like that in the instant case. The trial court verified the defendant's mental competency, explained the charges and their penalties, and informed the defendant of the rights he was waiving. Facts of the offense were read, which the defendant admitted, and the defendant signed a written waiver of indictment.[3]

---

[3] In Grandia, signing a waiver of indictment in open court was a "necessary prerequisite" for entering a guilty plea in the circumstances of the case, which involved failing to file a monetary instrument report, in violation of 31 U.S.C. §§ 5316(a)(1)(B) & 5322(a), and unlawful entry after deportation, in violation of 8 U.S.C. § 1326(a). Grandia's progeny does not reference this "necessary prerequisite," and, accordingly, we

-10-

When asked if he was entering the plea voluntarily, the defendant responded affirmatively. The judge then declared that he would accept the guilty plea. The Second Circuit held that

> the district court's failure to specifically ask the defendant "How do you plead?" is not necessarily fatal if, as here, it is clear from the facts and circumstances that the defendant intended to plead guilty, affirmatively admitted his guilt, stated that he was entering his plea voluntarily, and fully believed he was pleading guilty.

Grandia, 18 F.3d at 187. The court found that the district court's "oversight in not formally asking the defendant 'How do you plead?' made no difference." Id. The court concluded, "It is plain to us that at the time of the plea all involved, and particularly the defendant, believed that a guilty plea had been taken and that in fact the defendant voluntarily entered a valid guilty plea before the district court." Id.

In United States v. Williams, 20 F.3d 125 (5th Cir. 1994), defendant Mullins implicitly argued that a valid guilty plea required a trial court to ask "How do you plead?" and required a defendant to respond "Guilty." The Fifth Circuit "found no cases that contain such a holding"; rather, "there is no fixed colloquy, no set sequence or number of questions and answers, no minimum length of the hearing, and no talismanic language" required of guilty plea proceedings. Williams, 20 F.3d at 133 n.9 (quoting Stewart v. Peters, 958 F.3d 1379, 1384 (7th Cir. 1992)). The Fifth Circuit determined that based on colloquies concerning the defendant's understanding of the nature and consequences of the charges as well as written confessions for each offense, "it [was] of no consequence that Mullins did not specifically utter the words 'I am guilty'" because the "language used [wa]s expressive of the defendant's culpability." Id. at 134.

In United States v. Spearman, 39 F. App'x. 63 (6th Cir. 2002), the trial court not only failed to ask the defendant how he pled, it also failed to confirm whether the defendant signed the plea agreement. The Sixth Circuit pointed out that "the nearest Spearman came to acknowledging guilt came in response to a boilerplate question asked in order to confirm that he would not continue to deny guilt," with the trial court asking whether the defendant was pleading guilty "freely and voluntarily" as his own decision and because he was actually guilty of the charges. Spearman, 39 F. Appx. at 67 n.9. However, citing Grandia and Williams, the Sixth Circuit held that a "guilty plea will not fail on the absence of an express declaration of guilty if the language used is expressive of the defendant's culpability." Id.

---

attribute signing a waiver of indictment to part of the facts and circumstances of Grandia only that helped determine that the defendant pled guilty without being asked "How do you plead?" and without responding "Guilty."

at 67. The Sixth Circuit determined that the guilty plea proceeding "obtained a clear expression that Spearman intended to plead guilty." Id.

In Wisconsin v. Burns, 594 N.W.2d 799 (Wis. 1999), the defendant signed a plea questionnaire and waiver of rights form before the plea colloquy during which the judge asked questions about and the defendant responded affirmatively to his understanding of the charges, the effects of his plea, and the rights he was giving up. The Wisconsin Supreme Court held that the "only inference possible from the totality of the facts and circumstances of this case is that this defendant intended to plead no contest." Id. at 804-05. The court found that this totality of the circumstances test was applicable to pleas of guilty as well. Id.[4]

The defendant contends that extra-jurisdictional case law is not applicable to his case because it does not reflect the extra protections guaranteed by Mackey and Tennessee Rule of Criminal Procedure 11. The Burns Court acknowledged that the applicable Wisconsin statute[5] does not explicitly require a trial court to ask a defendant to state a plea "expressly and personally in open court." Id. Similarly, no Tennessee statute or rule explicitly requires a trial court to ask a defendant to state a plea expressly and personally in open court. Furthermore, although Tennessee courts "are not bound by federal rules or the rules of sister states," this Court finds "merit in uniformity" and considers extra-jurisdictional case law for guidance. Newsome, 778 S.W.2d at 36. Accordingly, while we are not bound by extra-jurisdictional case law concerning the effect of a trial judge not asking a defendant "How do you plead" and the defendant not responding "Guilty," such case law provides

_____

[4] The Burns Court separates the due process issue of knowingly and voluntarily entering a guilty plea from determining whether defendants must "expressly and personally convey their pleas in open court on the record." Burns, 594 N.W.2d at 804 n.7. The parties in the instant case made the same distinction at oral argument. Because determining substantial compliance with the guilty plea colloquy relies upon a defendant's intent, words, and belief, we find, however, that the question of whether a judge must ask a defendant "How do you plead?" and the defendant respond "Guilty" is part of such a due process inquiry.

[5] The Court references Wis. Stat. Ann. § 971-08(1) (Lexis through 2010 Act 189), which reads, in part,

| (1.) | Before the court accepts a plea of guilty or no contest, it shall do all of the following: |
|---|---|
| (a) | Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted. |
| (b) | Make such inquiry as satisfies it that the defendant in fact committed the crime charged. |
| (c) | . . . |
| (d) | Inquire of the district attorney whether he or she has complied with s. 971.095(2) [requiring district attorneys to confer with victims regarding the prosecution and possible outcomes of a case]. |

guidance in interpreting Tennessee's substantial compliance standard. Thus, when determining whether a trial court substantially complied with the advice litany of <u>Boykin</u>, <u>Mackey</u>, <u>Neal</u>, and Rule 11, we must look to the facts and circumstances of the guilty plea hearing to see if the defendant intended to plead guilty, affirmatively admitted his guilt, stated that he was entering his plea voluntarily, and believed he was pleading guilty. <u>See</u> <u>Grandia</u>, 18 F.3d at 187.

Here, the defendant completed, signed, and submitted to the court the Blakely Waiver form as well as the "Request for Acceptance of Plea of Guilty Waiver of Rights" form, which asked the court to accept his plea of guilty and the agreement he and his attorney reached with the district attorney. The trial court asked and the defendant responded affirmatively to his understanding of these forms, the charge to which he was pleading, its range of punishment, the plea agreement in his case, the rights he was waiving by pleading guilty, his right to an attorney throughout the proceedings, and the effects of a guilty plea on possible future sentences. The defendant affirmed the facts of his offense and that he was knowingly and voluntarily giving up each of his rights as well as knowingly and voluntarily deciding to plead guilty. In fact, the trial court referenced "pleading guilty," "plea of guilty," and the like over ten times while addressing the defendant. At the post-conviction hearing, the defendant confirmed that the trial court had asked him these questions and that he had answered them affirmatively. He further stated that after the trial court's colloquy he understood that he had pled guilty. Thus, based on his affirmative responses to the trial court's questions at the guilty plea hearing and his verifying responses at the post-conviction hearing, the defendant intended to plead guilty. By admitting the facts of his offense, the defendant affirmatively admitted his guilt. By answering the trial court's question "And is it your free and voluntary decision to plead guilty" with "Yes, sir, Your Honor," the defendant stated that he was entering his plea voluntarily. With his admission at the post-conviction hearing that he understood that he was pleading guilty when he left the courtroom after the guilty plea hearing, the defendant believed that he was pleading guilty. These facts and circumstances "admit of no other conclusion" than that the defendant pled guilty. <u>Grandia</u>, 18 F.3d at 187.

The trial court's colloquy with the defendant essentially served as a checklist of <u>Boykin</u>, <u>Mackey</u>, <u>Neal</u>, and Rule 11. By asking the defendant whether he understood each of the mandates in this case law and rule as well as whether he was knowingly and voluntarily waiving rights and pleading guilty, the trial court "expresse[d] the sense of the substance of the required advice." <u>Howell</u>, 185 S.W.3d at 331 (citing <u>Neal</u>, 810 S.W.2d at 137). Expressing the "sense of the substance of the required advice" can occur when "the sense of the rights and information set out in the litany is completely stated to the guilty-pleading defendant, on the record, even though the trial judge does not use the exact script suggested." <u>Neal</u>, 810 S.W.2d at 137. The trial court completely stated the rights and information in the <u>Boykin</u>-<u>Mackey</u>-<u>Neal</u>-Rule 11 litany on the record to the

defendant. While the trial court did not use the exact, typical script for guilty pleas, which includes the question "How do you plead?" and the defendant's response, the trial court was not required to do so under Neal. See id. The trial court substantially complied with the guilty plea litany to the point that the defendant, as he testified at the post-conviction hearing, understood that he had pled guilty when the guilty plea hearing concluded. In his post-conviction order, the trial court found that it had "substantially complied" with Rule 11 in the guilty plea hearing. As Neal states, "Where there is substantial compliance the root purpose of the prescribed litany has been served and the guilty plea passes due process scrutiny because it was made voluntarily and understandingly." Id. Because the trial court substantially complied with the federal and Tennessee guilty plea mandates with its questions and the defendant affirmatively answered these questions, the defendant knowingly, voluntarily, and intelligently entered a guilty plea and, thus, received due process under the facts and circumstances of this case. See id. This finding of substantial compliance precludes a review of this case under the harmless error standard.

The defendant argues that no guilty plea is valid unless the defendant is asked "How do you plead?" This argument, however, values form over substance. Conversely, substantial compliance, by its very name as well as its meaning under Tennessee law, values substance over form. Boykin, Mackey, Neal, and Rule 11 dictate the substance of guilty plea hearings and, therefore, what is necessary for a guilty plea to be valid. Best practice mandates that trial courts ask "How do you plead?" and that defendants respond. Such a practice is "strongly preferred," and trial courts in Tennessee must be "vigilant to ensure that a defendant affirmatively states his plea for the record." Grandia, 18 F.3d at 187. All trial courts should adhere to this long-time practice to ensure that defendants plead guilty knowingly and voluntarily and thereby receive due process of law. It is the rare instance where, as here, the facts and circumstances of a case demonstrate that a defendant pled guilty without the trial court asking "How do you plead?" and the defendant responding "Guilty." Therefore, trial courts in Tennessee should continue their practice of not only following the dictates of Boykin, Mackey, Neal, and Rule 11 but also of asking the defendant "How do you plead?" and having the defendant respond.

The defendant relies upon State v. Smith, No. E2004-02448-CCA-R3-CD, 2005 WL 2179578 (Tenn. Crim. App. Sept. 9, 2005). In Smith, the Court of Criminal Appeals found that the record indicated the defendant never appeared in court to enter a guilty plea and the trial court did not conduct a plea colloquy prior to sentencing. The Smith court stated,

> [I]t appears from the record before us that the Defendant never personally entered a guilty plea in open court; the trial court never established a factual basis to support the convictions; and the trial court failed to advise the Defendant of *any* of her many

-14-

rights before convicting her. Under these circumstances, the Defendant's convictions would be void.

Smith, 2005 WL 2179578, at *5. These facts and circumstances differ significantly from those in the instant case. The defendant, Mr. Lane, personally appeared in open court. The State offered, the defendant affirmed, and the trial court accepted the factual basis for the conviction. The trial court informed the defendant of his rights and confirmed that he understood that he was waiving them. In essence, the defendant received the guilty plea colloquy Ms. Smith was denied. Therefore, reliance on Smith in the instant case is misplaced.

The Court of Criminal Appeals also found that the trial court did not "accept" the defendant's guilty plea as required by Rule 11(c)(4). Lane, 2009 WL 230859, at *7. Rule 11(c)(4) states, "If the court accepts the plea agreement, the court shall advise the defendant that it will embody in the judgment and sentence the disposition provided in the plea agreement." Tenn. R. Crim. P. 11(c)(4). However, neither Rule 11 nor the applicable case law specifically sets forth *how* to accept a guilty plea. Accordingly, when considering whether a trial court accepted a guilty plea, we adhere to the general rule of guilty plea proceedings, as stated above, requiring substantial compliance with Boykin, Mackey, Neal, and Rule 11. Here, when discussing the range of possible sentences, the trial court described the sentence the defendant would receive under the Plea Agreement. Near the end of his colloquy with the defendant, the trial court asked whether the defendant authorized his attorney to enter into plea negotiations with the district attorney. The defendant responded affirmatively. The trial court then again confirmed that the defendant understood the meaning of the guilty plea:

> THE COURT: Did you sign and read the "Defendant's Waiver of Rights sheet, Plea Negotiation Agreement, and the Blakely Waiver that I am holding up here?
>
> MR. LANE: Yes, sir, Your Honor.
>
> THE COURT: Did you read all that?
>
> MR. LANE: Yes, sir.
>
> THE COURT: Do you understand all that?
>
> MR. LANE: Yes, sir.
>
> THE COURT: Did you go over it with your lawyer?

-15-

MR. LANE: Yes, sir.

After confirming this information with the defendant's attorney, the trial court informed the defendant that because probation was not part of the agreement, it would decide probation at a later sentencing hearing where the defendant would be able to present testimony. Both the trial court and the defendant referred to the later hearing as the "Probation/Alternative Sentencing Hearing" and the "Probation Hearing," respectively. The same day, the trial court issued an order accepting the defendant's guilty plea, signed by the trial court, the defendant, and counsel for the State and the defendant. The "strongly preferred" practice is to verbally accept a defendant's guilty plea in open court. Grandia, 18 F.3d at 187. However, the facts and circumstances of this case, including the acceptance order, the trial court's summary of the plea agreement and guilty plea colloquy, the discussion regarding probation, and the defendant's post-conviction testimony that he believed he had pled guilty, demonstrate that the information the trial court provided the defendant, while not as explicit as it should have been, substantially complied with Rule 11(c)(4).

Accordingly, because the facts and circumstances of this case demonstrate that the guilty plea proceedings here substantially complied with the dictates of Boykin, Mackey, Neal, and Rule 11, the defendant's guilty plea was valid.

**Conclusion**

Based on the facts and circumstances of this case, the colloquy at the defendant's plea hearing substantially complied with the mandates of Boykin, Mackey, Neal, and Rule 11. The defendant intended to plead guilty, affirmatively admitted his guilt, stated that he was entering his plea voluntarily, and believed that he was pleading guilty. Accordingly, the judgment of the Court of Criminal Appeals is reversed. We remand to the trial court for reinstatement of the defendant's conviction under the accepted plea agreement.

_____
SHARON G. LEE, JUSTICE