# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### October 2, 2012 Session

## MIKEL HAMRICK v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 10-00991     J. Robert Carter, Jr., Judge**

**No. W2011-02275-CCA-R3-PC  - Filed December 19, 2012**

A Shelby County grand jury returned a seven-count indictment against petitioner, Mikel Hamrick.[1]  He entered guilty pleas to four of the counts, including aggravated burglary, especially aggravated stalking, domestic assault, and theft of property less than $500, for which he received an effective four-year sentence.  The remaining counts were dismissed pursuant to the plea agreement.  Petitioner sought post-conviction relief, alleging that his mental instability rendered his guilty pleas involuntary and that the infirmity was compounded by trial counsel's failure to adequately advise him of the consequences of pleading guilty.  Following our review, we affirm the judgment of the post-conviction court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

Samuel Rodriguez, III, Memphis, Tennessee, for the appellant, Mikel Hamrick.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and David Zak, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Petitioner's name is spelled in various ways throughout this record.  We have used the spelling on his petition.

**OPINION**

### I. Facts and Procedural History

The charges in the indictment stemmed in part from petitioner's unlawful entry into the home of his ex-wife through a malfunctioning window in August 2009. While in the victim's home, petitioner grabbed the victim's face and attempted to force her to kiss him. She fled from her home and later noticed $100 missing from her wallet. The grand jury indicted petitioner for three counts of aggravated burglary, one count each of especially aggravated stalking and domestic assault, and two counts of theft of property less than $500. On September 8, 2010, he entered guilty pleas to one count each of aggravated burglary, especially aggravated stalking, domestic assault, and theft of property less than $500. The trial court sentenced petitioner in accordance with the negotiated plea agreement to four years for aggravated burglary, four years for aggravated stalking, eleven months and twenty-nine days for domestic assault, and eleven months and twenty-nine days for theft of property less than $500, with all sentences to run concurrently with each other. As part of the plea agreement, petitioner agreed not to seek a suspended sentence at any time. The State dismissed the other charges against him.

Petitioner filed a timely pro se petition for post-conviction relief on May 3, 2011. The post-conviction court appointed counsel and held an evidentiary hearing on August 25, 2011. The court denied relief by written order dated September 16, 2011.

### II. Facts from Evidentiary Hearing

Petitioner testified that he was diagnosed with bipolar disorder in early 2009. At that time, he had other criminal charges pending against him and was released on bond. After being charged with those crimes, he began to experience panic attacks and anxiety that caused difficulty breathing and impaired his performance at work. He also experienced mood swings, impulsiveness, and irrational thoughts. Because of his symptoms, petitioner sought psychiatric help. A psychiatrist prescribed Abilify, Xanax, and Seroquel for him. The medications helped petitioner deal with his anxiety and stabilized his moods. He ceased taking his medications when he was incarcerated on the charges in this case because the infirmary at the jail would not allow him to have the drugs.

Petitioner testified that after he stopped taking his medications, he became withdrawn and suffered from hallucinations. He talked to himself and had "conversations" with people who were not there, such as his ex-wife, family members, and children. He would sometimes wake up and think that his children were sitting on the bed beside him. Petitioner further testified that he also experienced hallucinations of being with his family, in his house, or in

his back yard. He would believe he was actually at these locations until interrupted by a cell guard or another person.

Petitioner testified that he was represented by an assistant district public defender (hereinafter "trial counsel") in the trial court. Petitioner stated that when they first met, trial counsel informed him that they could "beat most of this stuff . . . ." According to petitioner, trial counsel later told him that if the victim came into court and said that she did not want to be with petitioner and that she was afraid, petitioner could receive up to forty-three years in prison. He testified that the proposition scared him "to death."

Petitioner explained that he did not understand what was happening when he entered his guilty pleas. When trial counsel mentioned that he would talk with the State to negotiate a settlement, petitioner repeatedly instructed him to "take it to trial." Trial counsel met with petitioner on subsequent dates and reiterated that the State had extended its best offer, but petitioner maintained his desire to proceed to trial.

Petitioner stated that he never seriously considered pleading guilty to any of the charges while he was mentally stable and taking his medication. He intended to fight the charges. He claimed to have had an alibi witness who would have supported his defense at trial. Petitioner was depressed on the day he entered his guilty pleas. He further claimed that his mother had advised trial counsel of petitioner's psychological issues. Petitioner did not recall having a mental evaluation while he was incarcerated on the charges. He testified that he was not thinking clearly on the day he entered his pleas and that his pleas were not voluntary.

On cross-examination, petitioner acknowledged that the proof against him consisted of his ex-wife's testimony that he broke into her house. He also admitted that he pawned items he stole from her house during the burglary. He had already been convicted of aggravated assault against his ex-wife at the time the new charges were filed and was on probation for that offense. One of the conditions of his probation on the prior conviction was for him to stay away from his ex-wife.

Petitioner recalled meeting with trial counsel eight to ten times before entering his pleas. During those meetings, trial counsel advised petitioner about what was happening in his case. Petitioner understood that his plea agreement provided for a lesser sentence than he could have received had he gone to trial and been convicted. He testified that at the time he entered his pleas, he understood that the State had added the special condition that he could never seek probation on the current charges. Petitioner did not recall consulting with

Dr. Wyatt Nichols[2] in the jail.  Petitioner recalled that his father was present when he entered his guilty pleas and that his father's advice to him was to "take the plea."

Contrary to his testimony on cross-examination, petitioner testified on redirect examination that he was surprised to learn that he agreed to waive the right to file a petition for a suspended sentence.  He stated that entering the pleas was contingent upon his being allowed to apply for a suspended sentence.

Trial counsel testified that eighty-five percent of his practice involved criminal law. He stated that he represented petitioner on several charges in this case, including aggravated burglary and especially aggravated stalking.  He recalled that it was often difficult to communicate with petitioner.  Trial counsel explained that petitioner believed everyone was "out to get him."  Petitioner had some "anger issues" and did not always listen very well.  He added that petitioner was usually very angry because he did not feel that he should have been in court in the first place.  Petitioner would beat the table, slam his head on the table, and yell.  Trial counsel had experience dealing with clients with mental issues, but he did not think petitioner suffered from any such issues because his report from Dr. Nichols came back "negative."

On the day petitioner entered his pleas, trial counsel observed that petitioner was "the angriest [he] had seen him the whole time" and that petitioner was "fuming" during the plea colloquy.  Trial counsel testified that while it was "obvious" that petitioner did not like entering the pleas, counsel had "no mistake in [his] mind [petitioner] knew what he was doing."  Trial counsel stated that he negotiated the plea offer of four years with the condition that petitioner would not seek a suspended sentence on the case to which trial counsel was assigned.  Although the plea agreement provided that petitioner would not apply for a suspended sentence on the instant case, trial counsel testified that petitioner was within his rights to seek reinstatement of probation on his previous conviction of aggravated assault and could then receive parole on the instant case.  Trial counsel offered to assist petitioner in arranging counseling, anger management classes, and fatherhood programs so it would be easier for petitioner to obtain parole.  Notwithstanding petitioner's agreement to not seek a suspended sentence, trial counsel filed a petition for a suspended sentence because he thought that the trial court could decide the issue independently of the plea agreement. The trial court stated that it no longer had jurisdiction because petitioner had been transferred to the penitentiary.

_____

[2]  Dr. Nichols is a clinical psychologist who performed an evaluation of petitioner.  He determined that petitioner was competent to stand trial and that he did not suffer from a mental disease or defect that would preclude him from understanding the nature and wrongfulness of his criminal acts.

Trial counsel explained that he thought it was his responsibility to not only inform clients about their range of punishment but also his "gut feeling" of what he thought they would receive. He informed petitioner that based on the trial judge's reputation, if petitioner were convicted, the court would "max [the sentences] out [at] Range [II]," and petitioner would face twelve to sixteen years in prison. Trial counsel identified a letter from Dr. Nichols that contained the results of petitioner's mental evaluation. Trial counsel explained that petitioner's father wanted petitioner to take the pleas so that visitation could continue between petitioner's parents and his children. Petitioner considered that factor in entering his guilty pleas. Trial counsel also noted that he did not speak with petitioner's mother until after petitioner entered the guilty pleas; he dealt solely with petitioner's father during the course of the proceedings. Trial counsel confirmed that on the day of the pleas, petitioner was angry, but he knew what was happening.

Petitioner's father, Lee Hamrick, testified that petitioner was subject to mood swings prior to his incarceration. He recalled an occasion during which no one could communicate with petitioner because he was "in a fisted rage." Petitioner would also say things that did not make sense. Mr. Hamrick testified that he "helped force" petitioner into taking the pleas because he had an agreement with petitioner's ex-wife allowing visitation with petitioner's children. He was more afraid of losing contact with his grandchildren than he was of seeing his son go to jail.

Clifton Wayne Rudolph testified that he had been friends with petitioner for more than thirty years and that petitioner had lived with him on occasion. Mr. Rudolph further described petitioner's mood swings and occasional inability to communicate. Mr. Rudolph also stated that petitioner had held a job and had been able to transport himself to and from his employment.

## III. Analysis

Petitioner advances two claims of error with respect to his guilty pleas: (1) that his guilty pleas were involuntarily entered in violation of his Fifth Amendment rights; and (2) that trial counsel was ineffective for failing to properly advise petitioner that he was entering pleas in which he relinquished the possibility of a suspended sentence in violation of his Sixth Amendment right to counsel.

### A. Involuntariness of Guilty Pleas

A guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and

intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5). To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* Courts should consider the following factors when ascertaining the validity of a guilty plea: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. *Id.* (citing *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)). "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id.* The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id.* (quoting *Blankenship*, 858 S.W.2d at 904).

To ensure that defendants' guilty pleas are voluntarily, knowingly, and intelligently entered, Rule 11 of the Tennessee Rules of Criminal Procedure sets forth, in pertinent part, the requirements for guilty pleas:

> Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:
>
> (A)   The nature of the charge to which the plea is offered;
>
> (B)   the maximum possible penalty and any mandatory minimum penalty;
>
> (C)   if the defendant is not represented by an attorney, the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and every other stage of the proceeding;
>
> (D)   the right to plead not guilty or, having already so pleaded, to persist in that plea;
>
> (E)   the right to a jury trial;

(F)     the right to confront and cross-examine adverse witnesses;

(G)     the right to be protected from compelled self incrimination;

(H)     if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I)     if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury; and

(J)     if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea.

Tenn. R. Crim. P. 11(b)(1).

Rule 11 also requires that the trial court ascertain that the plea is "voluntary and is not the result of force, threats, or promises," other than those contained in the plea agreement. Tenn. R. Crim. P. 11(b)(2). In addition, Rule 11 requires the trial court to inquire "whether the defendant's willingness to plead guilty results from prior discussions between the district attorney general and the defendant or the defendant's attorney." *Id.* Finally, the trial court must confirm that there is a factual basis for the plea. Tenn. R. Crim. P. 11(b)(3). Tennessee case law has further refined the requirements of a plea colloquy to include informing a defendant and ensuring that he understands that different or additional punishment may result from his guilty plea due to prior convictions or other factors and that the resulting conviction may be used for enhancement purposes in any subsequent criminal actions. *Lane*, 315 S.W.3d at 564 (citing *Howell*, 185 S.W.3d at 331).

After a full hearing, the post-conviction court found that petitioner's guilty pleas were knowingly, voluntarily, and intelligently entered. The transcript of the plea colloquy confirms that the trial court scrupulously followed the mandates of Rule 11 of the Tennessee Rules of Criminal Procedure and applicable state and federal law. During the plea colloquy,

appended to the record on appeal as an exhibit, petitioner answered each of the trial court's questions affirmatively. When the trial court noted that petitioner agreed not to seek probation, it specifically asked, "With all that in mind, Mr. Hamrick, do you wish to enter this guilty plea?" Petitioner confirmed that he did. Petitioner further acknowledged that he was entering the plea freely and voluntarily. Petitioner did not ask questions of the court or seek clarification of any point. In fact, the record reflects that, contrary to petitioner's assertions, he was thinking clearly in court, as evidenced by his concern about the authorization of jail credit.

In denying relief, the post-conviction court implicitly found that petitioner's testimony at the hearing concerning his mental instability was not credible. The court heard conflicting testimony from trial counsel and petitioner on this issue and credited trial counsel. "The trial court is the best source to determine the demeanor, credibility of witnesses, and the nuances of the evidentiary hearing." *State v. Taylor*, 968 S.W.2d 900, 905 n.3 (Tenn. Crim. App. 1997). Moreover, petitioner's testimony at the post-conviction hearing was in direct conflict with his testimony at the guilty plea hearing. At the guilty plea hearing, petitioner repeatedly answered that he understood his rights and the proceedings, acknowledged that he wanted to go forward although the pleas involved waiving his right to probation, and confirmed that his pleas were knowingly and voluntarily entered. At the post-conviction evidentiary hearing, he claimed that his mental instability precluded a voluntary plea. "A petitioner's testimony at a guilty plea hearing 'constitute[s] a formidable barrier' in any subsequent collateral proceeding because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)), *perm. app. denied* (Tenn. Aug. 15. 2012). In this case, the post-conviction court credited petitioner's testimony during the guilty plea hearing over his testimony at the post-conviction hearing. In sum,

> [t]he evidence does not preponderate against the findings of the post-conviction court. It appears the petitioner is suffering from a classic case of "Buyer's Remorse," in that he is no longer satisfied with the plea for which he bargained. A plea, once knowingly and voluntarily entered, is not subject to obliteration under such circumstances.

*Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002).

B.  Ineffective Assistance of Counsel

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006); *Lane*, 316 S.W.3d at 562 (citing *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane*, 316 S.W.3d at 562 (quoting *Grindstaff*, 297 S.W.3d at 216).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Questions regarding the credibility of witnesses are matters entrusted to the trial judge as the trier of fact. *Dellinger*, 279 S.W.3d at 292 (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact carry the weight of a jury verdict and are conclusive on appeal unless the preponderance of the evidence is otherwise. *Rigger v. State*, 341 S.W.3d 299, 307 (Tenn. Crim. App. 2010) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997)). However, conclusions of law receive no presumption of correctness on appeal. *Rigger*, 341 S.W.3d at 307 (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell*, 185 S.W.3d at 326 (citing *Strickland*, 466 U.S. at 689); *see Finch*, 226 S.W.3d at 316.

To establish that petitioner suffered prejudice as a result of counsel's deficient performance, petitioner "'must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different.'" *Finch*, 226 S.W.3d at 316 (quoting *Vaughn*, 202 S.W.3d at 116). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Vaughn*, 202 S.W.3d at 116 (quoting *Strickland*, 466 U.S. at 694); *see Finch*, 226 S.W.3d at 316. As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and the reliability of the outcome was called into question. *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694; *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Petitioner must establish both deficient performance and prejudice therefrom to be entitled to post-conviction relief. *Vaughn*, 202 S.W.3d at 116*; Howell*, 185 S.W.3d at 326.

It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004). We have previously concluded that petitioner's pleas were voluntary. Therefore, his claim that the pleas were not voluntary because trial counsel failed to advise him that he was entering pleas in which he relinquished the possibility of probation is effectively precluded. Nonetheless, we will briefly discuss petitioner's pleas in terms of trial counsel's performance.

At the guilty plea hearing, petitioner repeatedly answered that he understood his rights and the proceedings, acknowledged that he wanted to go forward although the pleas involved waiving his right to apply for a suspended sentence, and confirmed that his pleas were knowingly and voluntarily entered. One factor petitioner considered in deciding to plead guilty was to ensure that his parents would be able to continue visitation with his children. Trial counsel testified that the State's plea offer of four years was "a great deal." The previous prosecutor was "steadfast" in offering a sentence of no less than eight years, and the trial court could have sentenced him to twelve to sixteen years in prison as a Range III offender if petitioner had been convicted at trial. Trial counsel informed petitioner that the plea agreement did not preclude petitioner from seeking reinstatement of his probation on the prior aggravated assault charge and that he could apply for parole on the instant case. Petitioner asserted during oral argument to this court that trial counsel made petitioner "an unfulfillable promise" regarding his seeking a suspended sentence on the instant case notwithstanding the plea agreement to the contrary. The record reflects that trial counsel applied for a suspended sentence on petitioner's behalf but learned that because petitioner had been transferred to the penitentiary, the trial court no longer had jurisdiction. Deficient performance cannot be based upon circumstances beyond the control of trial counsel. The record supports the post-conviction court's conclusion that trial counsel's performance was not deficient.

Having previously rejected petitioner's claim that trial counsel's performance was deficient under *Strickland*, we are not obligated to assess whether petitioner suffered prejudice therefrom. Petitioner is not entitled to relief on this claim.

## CONCLUSION

After a thorough review of the record, the parties' briefs, the arguments of counsel, and the applicable case law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE