FILED

02/19/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2018

## JAMES LACKEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for White County**
**No. 2012-CR-5631    David A. Patterson, Judge**

_____

### No. M2018-00230-CCA-R3-PC

_____

The Petitioner, James Lackey, appeals from the denial of post-conviction relief, alleging that (1) trial counsel provided ineffective assistance in failing to call his brother as a defense witness at trial, and (2) the post-conviction court abused its discretion in failing to consider his brother's recorded interview as substantive evidence at the post-conviction hearing.[1]  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and J. ROSS DYER, JJ., joined.

Michael J. Rocco, Sparta, Tennessee, for the Petitioner, James Lackey.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Gary McKenzie and Phillip Hatch, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Just after midnight on February 23, 2012, the Petitioner shot and killed the victim, James Caldwell, in the victim's trailer.  State v. James Lackey, No. M2015-01508-CCA-

_____

[1] The Petitioner alleged several additional issues in his petitions for post-conviction relief, but because the Petitioner did not argue these additional issues at his post-conviction hearing and did not raise them in his appellate brief, we will not address them on appeal.  While the Petitioner included an issue regarding trial court's request for a missing witness instruction for Tommy Lackey in his amended petition, post-conviction counsel asserted that the Petitioner would not be pursuing that issue at the post-conviction hearing and would instead be focusing on trial counsel's failure to call Tommy Lackey as a defense witness at trial.  At the conclusion of the hearing, the post-conviction court characterized trial counsel's request for this missing witness instruction as a tactical decision and found that this stand-alone issue was "not an issue that [wa]s before the court[.]"

R3-CD, 2016 WL 4055709, at *2 (Tenn. Crim. App. July 27, 2016), perm. app. denied (Tenn. Oct. 20, 2016). Shortly after the shooting, the Petitioner called Deputy Steven Daugherty of the Bedford County Sheriff's Office and told the Deputy that "he had shot someone and that he needed help contacting the Federal Bureau of Investigation[.]" Id. at *1. The Petitioner later gave a statement to the Tennessee Bureau of Investigation (TBI), wherein he said he shot the victim after the victim reached for a gun with his left hand. Id. at *2. Around this time, the Petitioner's brother, Tommy Lackey, also gave a statement to the TBI regarding what he knew about the victim's death. In this statement, Tommy Lackey explained that he and the Petitioner were close with the victim because the victim had helped raise them. However, he said that the victim believed he and the Petitioner were responsible for a TBI drug raid against him and that the victim had talked several times about how he was going to kill the Petitioner. Tommy Lackey told the TBI that on the night of the victim's death, the victim sent him on a bogus errand at a time when he knew the Petitioner was planning to come by his property. Shortly thereafter, the Petitioner called him to tell him that things had gone bad and not to come back to the victim's property. Despite this, Tommy Lackey returned to the victim's property to try to find out what happened. Tommy Lackey said that the victim had found a rifle he had hidden on the victim's property and that he believed the victim had tried to shoot the Petitioner with this rifle because he saw a .22 caliber bullet, which was the ammunition for this rifle, in a blanket near the victim's dead body. He said that after discovering the victim's body, he saw this rifle in the victim's trailer and grabbed it because he had borrowed this rifle from another individual. On two different times in his statement to the TBI, Tommy Lackey suggested that he believed the Petitioner had been forced to shoot the victim in self-defense. On August 28, 2012, the Petitioner was indicted for first degree premeditated murder. Id. at *1; see T.C.A. § 39-13-202.

Following a jury trial, the Petitioner was convicted of the lesser included offense of second degree murder, for which he received a sentence of twenty-two years' imprisonment. Id.; see T.C.A. § 39-13-210. On January 16, 2015, the Petitioner filed a pro se petition for post-conviction relief, which was stayed by the court on July 24, 2015, while the Petitioner appealed his conviction to this court. Thereafter, this court affirmed the Petitioner's conviction, and the Tennessee Supreme Court denied him permission to appeal. Id. at *1-10. Pursuant to agreed extensions from both parties, the Petitioner's post-conviction counsel filed an amended petition for post-conviction relief on March 22, 2017.[2]

---

[2] Although the Petitioner's pro se petition for post-conviction relief is included in the record on appeal, his amended petition is not. However, the record clearly shows that an amended petition for post-conviction relief was filed and that this amended petition included the issues on appeal. Because the post-conviction court had access to and considered the issues raised in the amended petition when conducting the post-conviction hearing and entering its written order denying post-conviction relief, we will review the issues raised on appeal.

- 2 -

**Post-Conviction Hearing.** The following facts, relevant to this appeal, were provided at the January 4, 2018 post-conviction hearing. Trial counsel testified that he was the Petitioner's "second or third" attorney and had taken over the case from the Public Defender's Office. He said he met with the Petitioner nine or ten times before trial, reviewed two "very voluminous . . . banker boxes of files" for this case, and "went through every folder in the file" with the Petitioner.

Trial counsel said he and the Petitioner discussed potential witnesses, including Tommy Lackey, the Petitioner's brother; Wanda Lackey, the Petitioner's mother; and Angela Lackey Garcia, the Petitioner's sister. However, trial counsel asserted that the Petitioner "didn't have anybody that was going to help him that would have made any difference" and that the potential witnesses they discussed did not have "anything to add." He explained, "I'm dealing with a client who confessed, full confession, turned over the murder weapon. And so the strategy at trial was, okay, yes, you did it, why did you do it. And so the most key witness in this whole thing was [the Petitioner]." Trial counsel clarified that in light of the Petitioner's confession to the crime, the "defense was either murder by mistake or self[-]defense." Consequently, he said the Petitioner understood that he was the key witness in this case and that it would be beneficial for him to testify in his own behalf. Trial counsel added that the week prior to trial, he spent an entire evening with the Petitioner reviewing the Petitioner's testimony, his confession, and everything that had been said about Petitioner in this case. He said the Petitioner was well aware that his testimony at trial was necessary because if he had not testified, he would have been convicted of first degree murder, rather than second degree murder.

Trial counsel stated that he and his investigator searched for Tommy Lackey in several different states and that neither he nor the State was successful in locating him. He noted that he made several attempts to find Tommy Lackey at different points during his representation of the Petitioner, including approximately thirty days prior to trial, but all of these attempts were unsuccessful. Nevertheless, trial counsel maintained that Tommy Lackey's potential testimony was unreliable and "didn't help us at all," explaining,

> Tommy Lackey . . . allegedly gave a statement, whether it's true or not I don't know, that he had gone up [to the victim's trailer] at some point in time after the murder and taken out a rifle. Nobody ever sa[id] a rifle, nobody has ever seen a rifle, I don't even think that was true, I don't even think that he went to the murder scene. . . . [T]hat just didn't make any [sense], you know to have somebody try to clean up a crime scene, . . . that's what it sounded like, [and] I wasn't going to put that in front of a jury, that would be crazy.

- 3 -

Trial counsel said that because Tommy Lackey's potential testimony was not going to be helpful and because neither he nor the State could find him to clarify his testimony, he informed the Petitioner that he did not intend to call Tommy Lackey at trial. Although trial counsel knew that Tommy Lackey had also spoken with the public defender's investigator, he claimed that the statement did not contain anything helpful to the Petitioner. Trial counsel said he never asked for a continuance for the purpose of finding Tommy Lackey because he did not believe that he was a necessary witness at trial.

Although trial counsel chose not to subpoena Tommy Lackey, the State subpoenaed him. When Tommy Lackey failed to appear at trial, the State made a motion in limine to prevent the defense from eliciting hearsay evidence from statements made by Tommy Lackey, and trial counsel immediately requested a missing witness instruction, stating, "I didn't think [Tommy Lackey] had anything positive to say, but you know, you want to put that question to the jury[. T]he [S]tate didn't bring him[,] and they subpoenaed him[,] and you argue that. Good trial strategy." When arguing for the missing witness instruction, trial counsel asserted that Tommy Lackey was a potentially exculpatory witness even though trial counsel "had no idea what [Tommy Lackey] was going to say" and "could have said anything." He said Tommy Lackey's "only statement was he went and took a rifle . . . off the crime scene," but the Petitioner "never said that he saw a rifle." Instead, the Petitioner said he "thought [the victim] had a pistol in his hand" when the victim "in fact . . . had a cell phone in his hand [at the time he was shot]."

Trial counsel said that although the Petitioner told him that the victim "had a terrible temper," he did not recall Tommy Lackey's telling officers that Jim Caldwell had a terrible temper. In addition, trial counsel did not recall Tommy Lackey's telling officers that the victim sent him on an errand the night he was killed, that the victim waited for the Petitioner the night of the victim's death, or that the victim hated the Petitioner. Trial counsel acknowledged that if Tommy Lackey had said those things to officers, those statements could have been somewhat helpful when making a potential self-defense argument at trial. Nevertheless, trial counsel emphasized that "you've got to get [Tommy Lackey] here, you've got to find him."

Trial counsel said that he had prepared a subpoena for Tommy Lackey and would have filed it if he had been able to obtain an address for him. He noted that because the State had filed a subpoena for Tommy Lackey, he made a tactical decision to argue for the missing witness instruction at trial, even though the trial court declined to give it. When asked why he did not make an offer of proof regarding his efforts to find Tommy Lackey, trial counsel said that he recalled telling the court that he had looked for Tommy Lackey but was unable to find him.

Trial counsel noted that although he characterized Tommy Lackey as a "potentially exculpatory" witness when arguing for the missing witness instruction, he "didn't trust that [Tommy Lackey's] testimony actually would really help us." He said he made the "tactical decision" not to call Tommy Lackey, regardless of his unavailability, because he "wasn't a hundred percent sure he was actually exculpatory." He added that he only made the argument that Tommy Lackey was a potentially exculpatory witness with the hope that he would receive a missing witness instruction at the Petitioner's trial.

On cross-examination, trial counsel said that his discussions with the Petitioner made it clear that the Petitioner had shot the victim, that the Petitioner had provided the murder weapon to the police, and that the Petitioner had been the only person at the victim's residence at the time of the shooting. He said he discussed the Petitioner's trial testimony with him "[m]ultiple times[,]" that the Petitioner voluntarily chose to testify, and that the Petitioner was not "pressured" to testify due to Tommy Lackey's unavailability. The Petitioner's Right to Testify at Trial form was admitted into evidence without objection.

Although his conversations with the Petitioner made clear that Tommy Lackey was not present during the shooting, trial counsel said the Petitioner still "wanted to blame Tommy Lackey for the murder or [claim] that maybe Tommy Lackey had done it, but there was no proof, there was no hint, there was no evidence that would lead that direction." Trial counsel said he and the Petitioner discussed the fact that, if he could be located, Tommy Lackey's testimony might be detrimental to the Petitioner's case. They specifically discussed the fact that Tommy Lackey's original statement to the TBI was "that Tommy Lackey traveled to [the victim]'s camper after [the Petitioner] murdered [the victim] and when he got back to the trailer, there was no gun close to [the victim], no handgun close to [the victim], only a rifle wrapped in cloth in the corner of that trailer[.]" Trial counsel stated that Tommy Lackey's statement to the TBI made it difficult for the Petitioner to take the stand and assert that the victim had a pistol in his hand when he shot him. Trial counsel also noted that when law enforcement officers searched the victim's trailer, they did not find a pistol but did find a cell phone on the victim's person. Trial counsel explained,

> [Y]ou can mistake a cell phone for a pistol perhaps in the dark, gloomy, scar[y] place. You can't mistake a cell phone for a rifle. And so having a rifle in [the victim's trailer] . . . surely didn't help [the Petitioner]. And that's my thinking and my strategy . . . who cares if there was a rifle, I'm glad there's no testimony there was a rifle in the room. It makes more sense in our defense that [the Petitioner] made a mistake [in thinking that the victim's cell phone was a pistol].

- 5 -

Trial counsel said that he made the strategic decision not to call Tommy Lackey as a witness at trial because he believed that Lackey's testimony might be "detrimental" to the Petitioner's case. He also mentioned that because the State's resources were better than his, if the State was unable to find Tommy Lackey, then he would have been unable to locate him.

Trial counsel said he and the Petitioner discussed his concerns about calling Tommy Lackey as a witness at trial, which included: "I can't find [Tommy Lackey], I don't know what he's going to say, there's no guarantee that he doesn't come in and throw you under the bus. . . . [S]hort of coming in and confessing he was the murderer, I'm not sure what [Tommy Lackey] could have offered that would have really helped." Trial counsel reiterated that he made a tactical decision not to call Tommy Lackey and said that the Petitioner himself had reservations about calling Tommy Lackey as a witness at trial. He also remembered the Petitioner's saying that he did not want his brother, Tommy Lackey, involved in the case because "he was wanting to protect him to some degree" and did not want him to get in trouble for perhaps "tamper[ing] with the crime scene or something like that."

Tommy Lackey, the Petitioner's brother, testified at the post-conviction hearing that he had been friends with the victim for ten years at the time of the victim's death and had lived on the victim's property in 2013. He recalled speaking with TBI officers but could not remember what he said to them. He did not recall telling the TBI that the victim had a dark side and could "flip out" sometimes. Portions of Tommy Lackey's recorded TBI interview were played during his testimony at the post-conviction hearing to refresh his recollection. At first, Tommy Lackey refused to confirm that it was his voice on the recording. Although he initially asserted that this recording could have been "edited [or] manipulated[,]" he eventually admitted that it was his voice on the recording.

Tommy Lackey recalled telling the TBI officers that the victim thought that the Petitioner was responsible for "an earlier [drug] raid on him[,]" which caused "some conflict . . . between the two of them." He also remembered telling the officers that he did not feel safe on the victim's property. The night of the shooting, the victim asked Tommy Lackey to run an errand to pick someone up, which Tommy Lackey characterized as "a little odd . . . [b]ecause there wasn't nobody there when I got there." He said he told the officers that the victim waited for the Petitioner to arrive while he was gone on this errand.

Tommy Lackey confirmed that he turned over a rifle, not a handgun, into the TBI at the time of his interview. He asserted that this rifle remained in the trunk of his car and was "[n]ot taken from the residence of [the victim]" on the night the victim was shot. He added that "the only time [this rifle] was on [the victim's] property was [when it was] in

my possession" and said that he did not recall telling the TBI officers that he had hidden this rifle on the victim's property. While he admitted telling the TBI officers that he had removed a rifle from the murder scene, Tommy Lackey asserted at the post-conviction hearing that he never removed a rifle from the victim's trailer and did not recall telling the police that he found a rifle there.

On cross-examination, Tommy Lackey confirmed that the Petitioner knew that the victim was alone when he entered the victim's trailer the night of the shooting. He said that after leaving the victim's trailer to run the errand, he talked to the Petitioner and discussed the fact that he was no longer on the victim's property and that the victim was alone in his trailer. Tommy Lackey said that before he returned to the victim's property, he received a call from the Petitioner, during which the Petitioner told him "things had went bad[.]" Tommy Lackey confirmed that he had no personal knowledge of what happened between the Petitioner and the victim at the trailer that night. He also confirmed that he did not return to the victim's trailer that night. Tommy Lackey acknowledged that the Petitioner and the victim had been having problems with one another and that the Petitioner had previously made statements that the victim could run but could not hide.

During redirect examination, post-conviction counsel asked for Tommy Lackey's recorded TBI interview to be admitted into evidence, given that Lackey had identified those statements as his own, and the State objected on the basis of hearsay. Ultimately, the trial court admitted the recording but asserted that it was only going to consider Tommy Lackey's testimony at the post-conviction hearing as substantive evidence in determining whether to grant post-conviction relief:

> I'm going to allow it in. I'm going to take the testimony that Mr. Tommy Lackey has given today as the testimony that the court is going to consider as it considers this post[-]conviction hearing.

> Mr. Tommy Lackey is under oath to testify truthfully today. He may have been under oath at the time that he was giving statements to the TBI. And the court understands that also. What's clear today is what his testimony has been. He did not go back to the trailer. He had not had in his possession a pistol, that he had a rifle, that it was in his trunk, and a number of other things which I have documented here and tried to keep up with as we've done this.

> During the course of his testimony, the witness has been asked if it would refresh his memory as to those things that were said on the tape and he said whatever the record is is what the record is. He indicates also that

he may, that may be his voice. He doesn't know if it's been changed. And so the court is taking the testimony that he gives today.

The Petitioner also testified at the post-conviction hearing. He asserted that he only met with trial counsel three or four times, for about fifteen minutes each, prior to trial. He also said trial counsel spent only five minutes talking to him about his case at each of his pre-trial hearing dates and spent no more than two hours talking to him about his case shortly before trial. The Petitioner said that during these meetings, trial counsel never discussed trial strategy.

The Petitioner said trial counsel discussed potential witnesses with him and told him that his brother, Tommy Lackey, and his sister, Angela Garcia, would be called as witnesses at trial. The Petitioner said he believed that Tommy Lackey's testimony was helpful to his defense.

The Petitioner did not remember trial counsel's having any problems locating Tommy Lackey. He was not aware that trial counsel had hired an investigator in his case and asserted that he had never met with an investigator. He asked trial counsel to hire the public defender's investigator because she had taken a statement from Tommy Lackey, but trial counsel refused.

The Petitioner said he first realized that Tommy Lackey and Angela Garcia would not be testifying for the defense when he arrived at trial. Previously, trial counsel had told him he had issued a subpoena to Tommy Lackey. However, when he arrived at trial, trial counsel told him that the State had subpoenaed Tommy Lackey and that Tommy had failed to appear. He said trial counsel claimed that Tommy Lackey's failure to appear at trial would not be detrimental because they could make the Petitioner's case without him.

The Petitioner asserted that he was not prepared to testify. He said, "[Trial counsel and I] never discussed me testifying until maybe five minutes before I was swor[n] in and . . . signed that right to testify." The Petitioner said trial counsel never reviewed the right to testify form with him and never discussed the questions he would be asked" Although he admitted to signing the right to testify form, the Petitioner claimed he never read the form. The Petitioner said he did not know he could inform the court of his lack of understanding regarding the right to testify and "felt [he] was forced to testify[.]" He claimed that if he had known that he would be precluded from testifying about what Tommy Lackey told him, he would never have testified at trial.

On cross-examination, the Petitioner denied discussing the problems with Tommy Lackey's testimony with trial counsel. Instead, he claimed that Tommy Lackey's testimony, in light of the statement he gave to the TBI, would have helped his case.

The Petitioner also denied reviewing the right to testify form with trial counsel. Although he told the court he had read and understood this form, he claimed he had not actually read it and instead "agreed [to] whatever it t[ook] for [him] to testify[.]" The Petitioner acknowledged that the trial transcript reflected his statements that trial counsel had prepared him to testify at trial and that they had discussed the potential benefits and consequences of testifying.

The Petitioner acknowledged that he shot the victim and that it was never a part of his defense strategy to contend otherwise. However, he said he lied at trial about firing the second shot at the victim and told this lie only because he was precluded from testifying about his brother's involvement in the offense. The Petitioner claimed that he testified in his own behalf only because trial counsel told him to testify and that if it had been his choice, he never would have testified.

On redirect examination, the Petitioner said that although trial counsel did not review Tommy Lackey's recorded interview with him, he listened to it when he was represented by the public defender's office and later discussed this recorded interview with trial counsel. He stated that while he and trial counsel discussed the witness list for the defense, they never discussed the possibility of the Petitioner's testifying at trial. Regarding the mistake of fact defense, the Petitioner said,

> I was not familiar with it. The whole cell phone thing was all made up by [trial counsel] and I had never even heard this defense until he brought it up at trial. It's the first time I had heard anything about . . . say[ing] that I . . . mistaked [sic] [the victim's cell phone] for a gun. So what he was saying and what he was going to bring in front of the jury, I had never even heard anything about it and had no idea what he was going to do.

The Petitioner said he felt forced to testify at trial because no other witnesses testified on his behalf.

At the conclusion of the hearing, the post-conviction court noted that the Petitioner was convicted at trial of "second degree, not first degree murder," which the court believed was the result of "good lawyering" on behalf of trial counsel. On January 29, 2018, the court entered a written order denying the Petitioner's request for post-conviction relief. In it, the trial court found that "[b]ecause the Petitioner readily admits that he lied during his trial testimony, the Court regards as untrustworthy the testimony of the Petitioner during [the post-conviction] hearing." However, it found that "[t]he other witnesses[, namely trial counsel and Tommy Lackey,] presented by the Petitioner, are accepted by the Court as credible, and their testimony is accepted as true." As to the Petitioner's specific claim that trial counsel provided ineffective assistance in failing to

present the testimony of Tommy Lackey at trial, the post-conviction court made the following findings of fact and conclusions of law:

> The Petitioner has failed to demonstrate ineffective assistance of trial counsel because of the failure to present the testimony of Tommy Lackey. Tommy Lackey was not found prior to trial, though Petitioner's attorney and investigator made [an] effort to locate him.
>
> At the Petitioner's request, the Court allowed the introduction of Tommy Lackey's recorded statement given to investigators. However, its contents are not accepted as substantive proof. Tommy Lackey's testimony during this hearing is considered as substantive proof of what would have been his trial testimony. As such, Tommy Lackey's testimony would not have supported a defense, but could have been detrimental to the Petitioner had he testified at trial.

The post-conviction court ultimately held that "neither the testimony of the witnesses nor the exhibits introduced by the Petitioner demonstrate . . . deficient performance on the part of the Petitioner's trial attorney" or "give this Court reason to question the jury's finding of guilt beyond a reasonable doubt." It is from this order that the Petitioner now appeals.

## ANALYSIS

The Petitioner argues that trial counsel provided ineffective assistance in failing to call his brother as a defense witness and that the post-conviction court erred in failing to consider his brother's recorded TBI interview as substantive evidence. The State responds that the Petitioner failed to prove that he received ineffective assistance of counsel and that the post-conviction court properly relied on his brother's sworn testimony at the post-conviction hearing when denying relief. We agree with the State.

In reaching this conclusion, we are guided by the following well-established law pertaining to post-conviction relief. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgment of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the

- 10 -

weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

**I. Ineffective Assistance of Counsel.** The Petitioner argues that trial counsel provided ineffective assistance in failing to call Tommy Lackey to testify at trial. Specifically, he asserts that because trial counsel described Lackey's potential trial testimony as "exculpatory" during his request for a missing witness instruction, trial counsel could not then claim at the post-conviction hearing that he made a tactical decision not to call him to testify at trial. The State counters that the Petitioner has failed to show that trial counsel was deficient in failing to present Lackey's testimony at trial or that he was prejudiced by this alleged deficiency. We agree with the State.

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.3d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

Here, the record shows that trial counsel made adequate efforts to contact and locate Tommy Lackey, to no avail. Trial counsel testified at the post-conviction hearing that he made several attempts to locate Tommy Lackey in multiple states but that neither he nor the State could find him. Trial counsel also said that when he characterized Tommy Lackey's potential testimony as "exculpatory" when arguing for the missing witness instruction at trial, he did not know the substance of Tommy Lackey's testimony, was just "throwing things against the wall just to see what sticks[,]" and did not believe this testimony would have proven beneficial to the Petitioner's defense.

At the conclusion of the hearing, the post-conviction court noted that the Petitioner failed to show how Tommy Lackey's testifying at trial "would have changed the outcome of this case." Moreover, in its order denying relief, the post-conviction court concluded that Tommy Lackey's testimony "would not have supported a defense" and "could have been detrimental to the Petitioner had he testified at trial." Although the Petitioner characterizes Tommy Lackey's potential trial testimony as "exculpatory," the Petitioner has failed to show what specific testimony Tommy Lackey would have provided that would have exculpated the Petitioner and changed the outcome at trial. Moreover, when considering whether trial counsel's failure to call Tommy Lackey prejudiced the Petitioner, we recognize that the Petitioner was convicted not of first degree murder as charged, but of the lesser included offense of second degree murder. For all of these reasons, we agree with the post-conviction court that the Petitioner failed to establish that trial counsel's performance was deficient or that he was prejudiced by any alleged deficiency. Accordingly, the Petitioner is not entitled to relief on this issue.

**II. Admission of Recorded Interview as Substantive Evidence.** The Petitioner also argues that the post-conviction court "abused its discretion" when it failed to consider Tommy Lackey's recorded interview with the TBI as substantive evidence.

Specifically, the Petitioner claims that the post-conviction court erred in failing to consider Tommy Lackey's recorded interview when assessing the materiality of this proffered testimony, especially after Tommy Lackey admitted several times on direct examination that his recorded interview spoke for itself. See Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008) (concluding that "[w]hen a petitioner presents at the post-conviction hearing a witness he claims should have been called at trial, the post-conviction court must determine whether the testimony would have been (1) admissible at trial and (2) material to the defense"). The State responds that Tommy Lackey's recorded interview was only admitted for the purpose of refreshing his recollection and that the post-conviction court properly considered Tommy Lackey's post-conviction testimony, rather than his recorded TBI interview, in deciding whether to grant or deny relief. Alternatively, the State asserts that even if the recorded interview had been admitted as substantive evidence, the Petitioner still failed to show that he was entitled to post-conviction relief. We conclude that the post-conviction court properly denied the request to admit the recorded interview as substantive evidence.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Rule 802 states that "hearsay is not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 802. As the Tennessee Supreme Court recognized, "[t]he standard of review for rulings on hearsay evidence has multiple layers." Kendrick v. State, 454 S.W.3d 450, 479 (Tenn. 2015). The "factual and credibility findings" made by the trial court when determining whether a statement is hearsay "are binding on a reviewing court unless the evidence in the record preponderates against them." Id. (citing State v. Gilley, 297 S.W.3d 739, 759-61 (Tenn. Crim. App. 2008)). However, once the trial court has made its factual findings and credibility determinations, "the next questions—whether the facts prove that the statement (1) was hearsay and (2) fits under one the exceptions to the hearsay rule—are questions of law subject to de novo review." Id. (citing State v. Schiefelbein, 230 S.W.3d 88, 128 (Tenn. Crim. App. 2007); Keisling v. Keisling, 196 S.W.3d 703, 721 (Tenn. Ct. App. 2005)).

Rule 612 of the Tennessee Rules of Evidence explains the procedures when a witness uses a writing to refresh his or her memory:

> If a witness uses a writing while testifying to refresh memory for the purpose of testifying, an adverse party is entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony, the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion

withheld over objections shall be preserved and made available to the appellate court in the event of appeal. If a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires; in criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial.

Tenn. R. Evid. 612 (emphasis added).

Additionally, Tennessee Rule of Evidence 803 explains the limited circumstances under which the prior statement may be entered as an exhibit in a trial as recorded recollection:

A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Tenn. R. Evid. 803(5) (emphasis added).

Having reviewed the applicable law, we conclude that the post-conviction court properly admitted Tommy Lackey's post-conviction testimony, rather than his recorded TBI interview, as substantive evidence. The record shows that Tommy Lackey's recorded interview was repeatedly used on direct examination during the post-conviction hearing to refresh his recollection. After the State concluded its cross-examination of Tommy Lackey, post-conviction counsel asked that Lackey's recorded interview be admitted as substantive evidence. The State objected on the basis of hearsay. Thereafter, the post-conviction court admitted the recorded interview, consistent with Rule 612, for purposes of appellate review. The court stated that it would only consider Tommy Lackey's post-conviction testimony as substantive evidence, explaining, "Mr. Tommy Lackey is under oath to testify truthfully today. . . . He did not go back to the trailer. He [did not have] in his possession a pistol, that he had a rifle, [and] that it was in his trunk[.]"

In making this ruling, the post-conviction court expressly accredited Tommy Lackey's post-conviction testimony over the statements he made in his recorded TBI interview and implicitly held that Lackey's recorded interview was inadmissible hearsay.

- 14 -

The court also discredited the Petitioner's post-conviction testimony, based on his numerous admissions that he lied at trial, and accredited the trial counsel's and Tommy Lackey's post-conviction testimony over the Petitioner's testimony. The court then concluded, after reviewing all the evidence presented at the post-conviction hearing, that the Petitioner was not entitled to relief. Because the Petitioner has failed to show how the post-conviction court erred in failing to consider Tommy Lackey's recorded interview as substantive evidence, he is not entitled to relief.

## CONCLUSION

Based on the aforementioned authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE